In the Matter of William T. JOHNSON and Grace B. Johnson, Bankrupts,

William T. Johnson and Grace B. Johnson, Appellants.

No. 14317.

United States Court of Appeals Third Circuit.

Argued June 12, 1963.

Decided Oct. 7, 1963.

William V. Eisenberg, Camden, N. J. (Isadore H. Hermann, Camden, N. J., on the brief), for appellants.

William A. Ancier, Newark, N. J. (Jerome Alper & Alper, Newark, N. J., on the brief), for appellee.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

On a petition to review the Order of the Referee in Bankruptcy restraining the judgment creditor from enforcing its state judgment against the bankrupts, the District Court for the District of New Jersey reversed. 211 F.Supp. 337. The bankrupts have prosecuted this appeal, presenting the question whether they are discharged from liability on a judgment asserted by the creditor to have been based upon fraud.

The bankrupts, husband and wife, filed voluntary petitions in bankruptcy on May 20 and May 23, 1960, respectively. Their schedules listed as a judgment creditor the Passaic Clifton National Bank and Trust Company, now the New Jersey Bank and Trust Company (hereinafter called "bank"), which neither filed a claim nor objected to their discharge. On September 16, 1960, the bankrupts were granted their discharge in due form.

Thereafter, the bank pursued proceedings in the state court and otherwise attempted to enforce payment of its judgment. On May 19, 1961, the bankrupts filed a petition with the Referee in Bankruptcy seeking a restraint upon the bank to prevent its harassment of them. Upon

hearing, the Referee found that the case presented the appropriate indicia of hardship and embarrassment to warrant the exercise of jurisdiction. With this determination the District Court agreed.[1] Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Poolman v. Poolman, 289 F.2d 332 (8 Cir. 1961); White v. Public Loan Corp., 247 F.2d 601 (8 Cir. 1957); Personal Industrial Loan Corp. v. Forgay, 240 F.2d 18 (10 Cir. 1956), cert. den. 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957); Seaboard Small Loan Corp. v. Ottinger, 50 F.2d 856, 77 A.L.R. 956 (4 Cir. 1931). Since the rationale and grounds for the exercise of such jurisdiction are amply developed in these cases, as well as others in agreement, we need not pause for reiteration here. It is sufficient to state that the facts as found by the Referee and the District Court are within the cases and we can discern no abuse of discretion in assuming jurisdiction. The bank does not argue otherwise.

The crux of this case, then is whether the bankrupts were released from liability on the bank's judgment by their discharge in bankruptcy.

The facts are as follows:

On May 20, 1955, the bankrupts executed and delivered a promissory note in the amount of $2,860.20 to the Atlas Building Corporation for a home improvement loan. The note was payable at the bank in 60 monthly installments commencing on June 20, 1955. On January

1. The District Court stated, by way of summary:

"The facts in the instant case disclose that the judgment which was rendered against the respondents [bankrupts] was entered prior to bankruptcy; that although the respondents filed an answer in that action wherein judgment was obtained against them, they did not appear pro se or through counsel on the return day of the motion for entry of judgment or the subsequent date of the hearing thereon; that they had no notice of the judgment or the grounds upon which it was entered until sometime thereafter; that the respondents are small debtors and wage earners with modest income; that they filed voluntary petitions in bankruptcy listing in their schedules the

judgment which the bank seeks to enforce against them; that the bank made no objection to their discharge or otherwise participated in the bankruptcy proceedings despite notice thereof; that the bank harrassed the respondents at their place of employment, filed pleadings seeking payment from them out of their income and issued execution against their property in Atlantic County; that the respondents lost their home in Burlington County; and that they can ill afford the cost and expense of State Court proceedings and the endangerment of losing their employment; and finally, that they reside some distance from the venue of the court where the bank does business." 211 F.Supp. at pages 343-344.

31, 1957, the bankrupts executed and delivered a second note in the amount of $329.52 to the American Home Service Co., Inc. also for a home improvement loan, which note was payable at the bank in 24 monthly installments commencing on April 5, 1957.

After bankrupts defaulted on both notes the bank instituted suit in the Law Division of the Superior Court of New Jersey. Service of the summons and complaint was made upon the bankrupts on September 24, 1957. The complaint consisted of four counts. On the first count, the bank sought recovery as a holder in due course for money due in the sum of $344.75 on the note of January 31, 1957; on the second count, the bank sought recovery as a holder in due course for money due in the sum of $1,936.22 on the note of May 20, 1955; on the third count, the bank alleged the respondents had made certain untrue representations to the bank to secure the monies loaned and sought recovery for legal services in the sum of $450.00 in addition to the aforementioned sums as damages; and on the fourth count of the complaint, the bank alleged the respondents were the owners of certain land and building which they were about to sell and convey with intent to hinder, delay and defraud the bank in the recovery of its claim and in asserting its lien against the property for the monies loaned which were used in the construction and improvement of the property. The complaint contained a demand for a judgment of $3,000.00, costs, a "judgment in fraud," a lien upon the property, and an injunction against the sale thereof.

The bankrupts, through counsel, filed an answer to the complaint wherein they admitted that the bank was a holder in due course of the notes but denied the remaining allegations of the complaint. Thereafter, the bank sent a notice, dated December 26, 1957, by certified mail, to the bankrupts advising them that it intended to apply on "January 10, 1957" to the court to strike the answer to the first and second counts, upon the grounds that the same was sham and filed for the purpose of delay and for entry of judgment in fraud on the complaint. The notice further recited that "in support of said motion the following affidavit and the papers on record will be used." [2]

On the return date of the motion the bankrupts did not appear and the court set down May 20, 1958, as the date the matter would be heard. On May 20, 1958, the bank appeared and presented its proof in the matter, as a result of which a "judgment in fraud" was entered in favor of the bank and against the bankrupts in the sum of $2,080.97, together with interest, making a total of $2,164.17. The bankrupts were neither present nor represented at this hearing.[3]

By letter, dated June 2, 1958, the bank's attorney advised the bankrupts that a judgment had been entered against them but he did not indicate upon what grounds it was based. On November 10, 1958, the bankrupts signed a stipulation whereby they acknowledged that the sum of $2,399.68 was due to the bank and agreed to pay monthly sums on account thereof. The bank also agreed that upon payment in full it would reconvey to the respondents title to their home which it had theretofore purchased at a Sheriff's sale on November 6, 1958. The bankrupts defaulted on this agreement.

Thereafter, as previously stated, the bankrupts filed their voluntary petitions and the bank did not file a claim or contest the discharge. Its efforts to collect

2. The affidavit referred to in the notice was an affidavit of an officer of the bank setting forth that there was due to the bank the sum of $334.75 on the first count and $1,936.22 on the second count —a total of $2,270.97, less payment of $62.00 since commencement of suit, leaving a balance in the total sum of $2,208.-97. The affidavit makes no reference to the count on misrepresentation or to the intended transfer of the property alleged in the fourth count of the complaint.

3. The bankrupts testified below that they had no knowledge of the date set for hearing.

the debt following the bankrupts' discharge led to the institution of the proceedings now on appeal.

In addition to the foregoing facts, the Referee had before him and examined the transcript of the state court hearing on May 20, 1958, consisting of the testimony of an employee of the bank.

The Referee in Bankruptcy determined that the "judgment in fraud" obtained by the bank was unsupportable, indeed, in the circumstances, a nullity. This determination was made as part of the inquiry whether he should exercise his jurisdiction to decide dischargeability. Accordingly, he entered an Order restraining the bank from taking any further action on its judgment, and granted leave to the bank to proceed within 28 days with a petition to show cause as to the dischargeability of the debt. The bank, however, filed a petition for review with the District Court. It expressly elected to treat the order of the Referee as a final determination and waived any right to a further hearing before the Referee.

The District Court did not disagree with the Referee as to the facts. Indeed it was in accord with the Referee's conclusion that a judgment for fraud was not justified.[4] It held, however, that the state court having made a determination of fraud, the Referee could not look behind the judgment. Accordingly, it reversed the Referee's Order but continued the restraint for a limited period to permit the bankrupts to pursue state court remedies, if any.

We are constrained to conclude that the District Court erred.

■■ We start with Section 17, sub. a (2) of the Bankruptcy Act, 11 U.S.C. § 35, sub. a (2)[5] It is on this alone that the bank must rely to escape the effect of the bankrupts' discharge. In view of the remedial objective of the Bankruptcy Act, it is construed so that all debts other than those within its exceptive provisions

---

4. "The Referee stated that from the facts presented to the State Court he was satisfied that a judgment for fraud as rendered was not justified and with this conclusion, this Court is in accord. The loans made by the bank were advanced through home improvements companies as home improvement loans and were not made directly to the respondents [bankrupts] as personal loans as indicated on page 2 of the transcript of the testimony presented at the hearing before the State Court on May 20, 1958. This was apparent on the face of the notes in question and before the State Court. There is nothing in the transcript to indicate that in making the loans, the bank relied on or was misled by the alleged untrue representations to its detriment, or that the respondents intended to defraud the bank. The only testimony in this regard was a question propounded by the bank's attorney to the officer of the bank who testified * * *. This [answer] is a conclusion and finding of fact which was solely within the province of the court to make and should have been based on fact testimony. It is clear that, in the main, all of the alleged undisclosed indebtedness of the respondents was incurred *after* the issuance of the larger loan by the bank and there was no testimony as to the value and extent of the assets of the respondents or testimony as to the execu-

tion of the application for the loans or execution of the notes. This, coupled with the fact that the respondents were not present at the hearing, although served with notice of the original return day of the motion for judgment but not the continued or postponed date thereof, and the fact that they were allegedly misled as to the basis on which the judgment was requested certainly gives cause to question the propriety of the judgment based on fraud." 211 F.Supp. at page 346.

5. 11 U.S.C. "§ 35. Debts not affected by discharge
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *." [July 1, 1898, c. 541, § 17, 30 Stat. 550, as amended July 12, 1960, P.L. 86–621, § 2, 74 Stat. 409.]

**578**

are discharged: the purpose of the Act is not merely to distribute nonexempt property of the bankrupt among his creditors but, in the public interest, to afford him a fresh start in life. State Finance Co. v. Morrow, 216 F.2d 676, 679 (10 Cir. 1954).

■ In the instant case, the issue of dischargeability had not been determined previously. The state court judgment did not on its face indicate the content of the fraud for which it was given. Indeed, it does not appear whether the "judgment in fraud" pertained to count three or count four of the complaint. The debt reflected by the notes, upon which the bank sued as a holder in due course, was obviously discharged. Since the Bankruptcy Act is specific as to non-dischargeable debts, it was permissible, even necessary in the circumstances, for the bankruptcy court to inquire into the nature of the liability which had been reduced to judgment in order to determine whether it falls within the Act, and further to inquire into the circumstances surrounding the creation of the debt or the entry of the judgment. Poolman v. Poolman, supra; Personal Industrial Loan Corp. v. Forgay, supra; State Finance Co. v. Morrow, supra; Margolis v. Nazareth Fair Grounds, 249 F.2d 221 (2 Cir. 1957); White v. Public Loan Corp., supra. In this case it is not necessary to redetermine issues adjudicated by the state court or to determine whether the state court erred. The pertinent question is whether upon the record it could be concluded that the debt was not discharged. Having resolved that upon the record the debt did not clearly come within the exception, the Referee, as earlier stated, directed that the bank could proceed within 20 days with a petition to show cause as to the dischargeability of the debt, but it chose not to do so. As we read the District Court's decision, that court felt confined by the "judgment in fraud". But as we have indicated, the general judgment in fraud here should not be conclusive when the record discloses pertinent information bearing on the issue.

In our view, the beneficial purposes of the Act and the power of the court to resolve the essentially federal issue of nondischargeability would be subverted to dependence upon form alone. The bank having elected to stand on the record, and to treat the Referee's Order as final, the matter comes to rest.

For the reasons stated, the Order of the District Court will be vacated, and the cause remanded for the entry of an Order consistent herewith.