Sidney **MARTIN**, Appellant,

v.

Samuel **ROSENBAUM**, Appellee.

No. 18795.

United States Court of Appeals
Ninth Circuit.

March 28, 1964.

818

Robert G. Leff, Beverly Hills, Cal., for appellant.

Blanchard & Crispi, and Richard H. Levin, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from an order of the district court affirming, on petition for review, an order of a referee in bankruptcy, permanently restraining appellant from proceeding to collect a judgment he had recovered against the bankrupt in the California State courts.

Jurisdiction below rested on 11 U.S.C. §§ 11, sub. a(15) and 11, sub. a(10). Jurisdiction here, on 28 U.S.C. § 1291 and 11 U.S.C. § 47.

The facts need to be stated in some detail. Samuel Rosenbaum (appellee here) was, in the years 1956 to 1958, in the business of operating a meat market known as Meat Town, Inc., in Newark, New Jersey. He attempted to expand his business, found he was losing money, and decamped for California, leaving owing to creditors around $12,-000, of which he owed Jersey Packing Company some $4,000.00.

In California, he worked as a butcher, found his New Jersey creditors were pursuing him to California; and on January 24, 1961, filed his debtor's petition in bankruptcy, listing the Jersey City Packing Company debt of $4,000.

Previously, on March 25, 1959, Sidney Martin (plaintiff and appellant herein) had filed an action in the Superior Court of Los Angeles County, No. 719567, against Rosenbaum in three common counts (open book account, account stated, goods sold and delivered) and one count of "obtaining property by false pretenses and false representations, by purchasing goods on credit when he knowingly and intentionally did not intend to pay for them." The three common counts sought judgment for $3,991.93; the fourth or fraud count sought $3,990.50.

The false representations alleged in the fourth cause of action were that "the defendant represented to plaintiff that [he was] solvent and in good credit, and had sufficient assets over and above all [his] liabilities." The period of time when meat was purchased, as shown by the accounts attached to the complaint was June 12 to July 12, 1958. On June 12, 1958, Rosenbaum owed Martin $4,195.91; he paid $6,625.92 during June and still owed $1,701.57 because of additional purchases. From July 1 to July 12, 1958, Rosenbaum paid Martin $1,700.14, and on the 12th owed him $3,991.93. During this twelve day period in July (and despite the $1,700.-14 payment), Martin's fourth cause of action charges that "defendant had no intent whatsoever to pay the plaintiff for the merchandise so acquired from the plaintiff."

Rosenbaum defaulted in the State court suit, and in accordance with the rules of the California Superior Court and the State law and local court rules respecting the proof of a cause of action and the amount of the default judgment when any cause of action is based on fraud, Martin submitted an "Affidavit of Proof" (Exhibit B in evidence below).

In support of the fraud charge in the complaint, this "Affidavit of Proof,"

signed by Martin, recites with respect to the status of the account on July 1, 1958, that Rosenbaum

> " * * * stated that his business was improving and that his relationship with the operators of the discount store was extremely satisfactory and secure and that he stood to do as well as other concessionaires in the past, and that it was his 'opportunity of a lifetime.' "

The affidavit set forth the amount of the obligation as "$3,990.50." Based on the affidavit of proof, a *minute order* was entered on August 8, 1959 (dated August 4, 1959). It granted judgment for $3,990.50, interest of $250.22 and costs of $27.25. A *judgment* of default was also entered, in the same sums, on August 4, 1959. *Neither* the *minute order nor the default judgment specified that the judgment was based upon fraud.*[1]

Turning back to the bankruptcy proceedings, we find that Sidney Martin filed a proof of claim in the bankruptcy proceeding on June 21, 1961. Paragraph 4 thereof recited that "the original olbigation (sic) was $3,990.50; judgment including costs and interest entered in Los Angeles Superior Court for $4,269.95; payments thereon of $520 interest to date of $259.10, balance $4529.05 (sic)"; and paragraph 8 thereof stated: " * * * that no judgment has been rendered thereon, except judgment entered in LASC # 719567, certified copy annexed hereto and made part hereof."

No certified copy was ever annexed to the proof of claim, nor was it ever offered in evidence at any of the hearings hereinafter mentioned, nor was it produced until the time of argument on appeal, as mentioned in note 1.

Appellant sought to enforce his judgment by supplementary proceedings,

some before and some after the appellee's bankruptcy.

On October 18, 1961, appellee was granted a discharge in bankruptcy. No objection was filed by any creditor to such discharge.

On November 7, 1961, a petition was filed by appellee, reciting his discharge, the alleged harassment by appellant in the form of examination in supplementary proceedings in the State court, and requesting the issuance of an order to show cause why appellant should not be permanently enjoined from requiring the bankrupt to appear in supplementary proceedings then pending in the State Superior Court, or from otherwise enforcing his judgment. On the hearing of the order to show cause, the appellant was so restrained.

Appellant then filed a petition for rehearing, with points and authorities. Appellee filed a reply, with authorities and defenses. A hearing was had on November 28, 1961. The referee again ruled that the judgment represented an obligation dischargeable in bankruptcy. Findings appropriate were made and entered (Tr. pp. 58–64).

On March 20, 1962, appellant filed a petition with the district court for a review of the referee's order (Tr. pp. 65–70). The referee filed his certificate for the review of his order. Both sides submitted authorities, and orally argued the matter on September 10, 1962. On March 21, 1963, the district court affirmed the referee.

No full transcript of the hearing before the referee is before us, because appellant states, it was "unnecessary." A partial transcript was introduced below, and is in evidence. It relates primarily to the bankrupt's explanation to the referee as to how the debt sued on was incurred, and whether or not the judgment recovered for the debt could have been *based* on fraud, even though

---

1. Neither the minute order nor default judgment appeared in the record below. Upon stipulation of both parties, a photo-stat of each was lodged with this court at the time of oral argument, for our information.

neither it nor the State court's minute entry recited or referred to fraud.

Appellant urges seventeen points on which he relies, which he summarizes as follows:

"[A]lthough the Bankruptcy Court below is clothed with equity jurisdiction to determine whether a claim founded in a judgment should be within or excluded from the effect of a discharge, such jurisdiction * * * [should be] exercised only in unusual circumstances and where specific embarrassment arises, and * * * it is the duty of the party seeking such injunctive relief to first show the court that such circumstances and embarrassment exist, and * * * here the bankrupt failed to show such circumstances."

Because the judgment in the State court was entered upon appellee's *default*, urges appellant, it admits that the material allegations of the complaint are conclusive as to the issues tendered by the complaint. Therefore, says appellant, the referee had no authority to inquire into and hear evidence extrinsic to the judgment.

Appellant admits:

"[That] in ascertaining whether a judgment has been discharged in bankruptcy, broad language [of the case law] has stated that a Bankruptcy Court may go behind the Judgment to examine the entire record, and where the record before the Bankruptcy Court is not complete or in doubt receive extrinsic evidence for the purpose of determining the character of the debt upon which the Judgment is based, this rule is limited by two conditions on its face: *First*, that the record before the Bankruptcy Court be incomplete, and *second*, that the record before the Bankruptcy Court be in doubt." (Brief, pp. 17–18.)

If we accept appellant's statement of the law as gospel, he still cannot prevail, for the two conditions of the rule here exist, and the court was entitled to go behind the judgment, just as it did.

■ A bankruptcy court has primary jurisdiction to determine the dischargeability of a debt. Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230; Holmes v. Rowe, 9 Cir. 1938, 97 F.2d 537, 540. A claim based on fraud is not discharged in bankruptcy. 11 U.S.C. § 35, sub. a(2).

■ In ascertaining whether a judgment was discharged in bankruptcy, the court may go behind the judgment, and examine the entire record. It may determine therefrom the nature of the original liability, and extrinsic evidence may be heard to aid in that determination. Pepper v. Litton, 1939, 308 U.S. 295, 305–306, 60 S.Ct. 238, 84 L.Ed. 281. Cf. 1 Collier on Bankruptcy (14th ed.) ¶ 17.16 [4].

■ These general principles are not denied by appellant—he criticized the referee only "in his application of those rules." (Brief, p. 29.) But the exercise of his judgment is precisely what the referee was here required to do, under the circumstances here existing with respect to the default judgment. Personal Industrial Loan Corp. v. Forgay, 10 Cir. 1956, 240 F.2d 18, cert. den. 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436.

The debt here proved was based on a judgment, but what was that judgment? The certified copy of the judgment which was to prove that the judgment was based on fraud was never attached to the claim. It was never introduced into evidence below. It is now obvious that had it been, it would have failed to establish a judgment based on fraud. It was a default judgment based on a complaint alleging three common counts and one on fraud. The "Affidavit of Proof" limited recovery to the amount prayed for in count four (the sum of $3,990.50)—a limit beyond which the default judgment should not go. Neither the default judgment nor the minute order granting the judgment speci-

fied it was based on fraud, nor did either of those documents refer to fraud in any way.

As appellee states, in a case of this kind where there are several causes of action, and the default judgment does not contain a finding of fraud nor refer to fraud, only those other cases where *multiple causes of action* were alleged are of much value as precedent. Cf. Valdez v. Sams, 1957, 134 Colo. 488, 307 P.2d 189; Freedman v. Cooper, 1941, 126 N.J.L. 177, 17 A.2d 609. Both are auto personal injury cases, and the former disavows the rule of Fitzgerald v. Herzer, 1947, 78 Cal.App.2d 127, 177 P.2d 364. The latter was likewise a personal injury automobile case. There the charge against the defendant in the state court had been that he had acted in a manner "grossly careless, reckless," and "wanton." This, said the California court, was the equivalent of a charge that the acts were "willful and malicious," and hence damages obtained by default were not discharged in bankruptcy, by reason of the "willful and malicious" language used in Section 17 of the Bankruptcy Act (11 U.S.C. § 35).

Van Epps v. Aufdemkamp, 1934, 138 Cal.App. 622, 32 P.2d 1116, is likewise heavily relied upon by appellant. It is not a personal injury case, but one for conversion of certificates of stock, which was not defended.

"[W]e are of the opinion that such conversion was willful, because it was voluntary, and malicious, because it was intentional, and that the judgment based upon such injury is not released by the discharge in bankruptcy." (Id. 138 Cal.App. at 624, 32 P.2d at 1117.)

In all these cases relied upon by appellant the facts are a far cry from the facts of this case. We frankly state that the state court action appears on its facts to be closer to an open book account; commercial debt; than anything based on fraud. If the facts of this case demonstrate "fraud" then every man who represents he is a success in business and is able to pay his bills, and later finds he cannot, and goes into bankruptcy, would never be able to discharge his business debts.

The referee evidently felt the same way. He said:

"I cannot bring myself to feel that there were actually false representations in this case. * * * A review of the exhibit attached to the complaint and the affidavit [of proof] filed in the state court action would indicate that this was nothing more than an ordinary business transaction." (R.T. p. 2.)

The district court approved the referee's findings, and apparently agreed with his conclusions. We find neither the referee in issuing the permanent restraining order, nor the district judge in affirming that action, were in error, on the peculiar facts of this case. We affirm, after review of both matters of law and matters of fact. Sec. 24, sub. a, Bankruptcy Act, 11 U.S.C. § 47.

Other points raised by appellant are, in our opinion, not worthy of mention.