**In the Matter of TEL–A–SIGN, INC., Debtor, the Slater Bros. Co., Inc., Appellant.**

No. 17016.

United States Court of Appeals Seventh Circuit.

Aug. 15, 1969.

Robert E. Mann, Chicago, Ill., Robert L. Markovits, New York City, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Francis Currie, New York City, for appellant Slater Bros. Co., Inc.

Gerald F. Munitz, Chicago, Ill., for appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

**FAIRCHILD, Circuit Judge.**

In a proceeding for an arrangement under chapter XI, the referee enjoined all persons from commencing or continuing actions against the debtor, Tel-A-Sign, Inc. This order was entered August 7, 1967. The Slater Bros. Co., Inc. had started an action in July, 1967 against Tel-A-Sign and others in a New York court. Damages of $3,500,000 were demanded. On November 14, Slater asked that the injunction be vacated as to its action. The referee denied Slater's motion December 20, and permanently enjoined Slater from continuing its action against Tel-A-Sign or bringing another action against Tel-A-Sign for the same cause. On review, the district court affirmed, and Slater appealed.

The proceeding had begun July 26, 1967 as an involuntary bankruptcy. Tel-A-Sign filed a petition for arrangement August 7. On November 9, Tel-A-Sign proposed an arrangement providing for the payment in full of all administrative and other priority claims, provided they did not exceed $150,000, and for payment pro rata to general unsecured creditors of $125,000. A Mr. Covich was willing to make a loan of $275,000. A sufficient number of creditors accepted by December 7, and an order confirming the arrangement was entered January 5, 1968, after entry of the referee's order involved in this appeal.

Slater's petition alleged that it had brought its New York action against 20 defendants, including Tel-A-Sign and its subsidiaries; that the liability asserted was grounded in fraud and non-dischargeable.

After full hearing, the referee made detailed findings, both as to the merits of the fraud claim asserted in the New York action, and as to the significance of preventing continuation of the action in order to achieve an arrangement. He found that there was no evidence to support the fraud claim. He found, in substance, that liquidation would not produce enough to satisfy liens; that the

Covich loan would make confirmation of the arrangement possible, resulting in continuation of the business as well as a small dividend to general creditors; but that continuation of the New York action would destroy the possibility of confirmation.

Slater confined its petition for review to an assault on the referee's findings on the merits. In this court, however, Slater also seeks to attack the findings supporting the proposition that continuation of the New York action would have resulted in abandonment of the proposed arrangement.

█ It is true that testimony at the hearing was not directed at the latter proposition. For example, Mr. Covich did not testify about his attitude toward the New York action. The effect, however, of a lawsuit asserting a $3,500,000 non-dischargeable liability upon the viability of the arrangement seems readily inferable. Moreover the referee was familiar with the course of the proceeding. We find nothing to suggest that justice would be better served by permitting Slater to argue on appeal a point it did not make in the district court.

The Slater claim against Tel-A-Sign arises from a transaction Slater had with Scopitone, Inc. in late March or early April, 1964 and Tel-A-Sign's acquisition of Scopitone at about the same time.

Slater made an agreement with Scopitone. Slater was given a franchise to operate or distribute Scopitone machines [1] in certain areas, agreed to purchase a number of machines, and paid a franchise fee of $200,000. The franchise agreement bears the date April 10, 1964, although the referee found that the parties reached agreement March 27.

Tel-A-Sign acquired 80% of the outstanding stock of Scopitone. The referee found that the earliest negotiations for this acquisition took place April 3,

and that the acquisition was accomplished by transfer of the Scopitone stock on April 10 to a newly formed corporation called Synchro, an agreement by Tel-A-Sign, dated April 11, with Synchro, to purchase the stock, the agreement being subject to approval of Tel-A-Sign stockholders and directors, and consummation, after approval, on July 29, 1964.

The gist of the Slater complaint in the New York action is that Slater was induced by fraudulent misrepresentations, concealment, and nondisclosure to make the franchise agreement and pay the franchise fee. The material misrepresentations, concealments, and failures to disclose are alleged to have been made by Alvin I. Malnik, president of Scopitone and principal stockholder before the purchase by Tel-A-Sign, and Eric H. A. Teran, who had been employed by Malnik, for a fee, to induce Slater to enter into the franchise agreement. So far as possible responsibility of Tel-A-Sign for the alleged fraud by Malnik and Teran is concerned, the complaint alleges no more than (1) that "the defendants"[2] conspired to defraud Slater and cause it to enter into the franchise agreement and that Malnik and Teran acted to further the conspiracy, (2) that the negotiations for the purchase of Scopitone by Tel-A-Sign began before the franchise agreement was concluded and Tel-A-Sign conditioned its acquisition upon such conclusion, (3) that Tel-A-Sign knew that false representations were made to Slater, and (4) that in seeking its stockholders' approval of the purchase, Tel-A-Sign used the existence of the franchise agreement to justify the purchase.

It is apparent from the testimony taken before the referee that Slater has no information of any fact which would support a finding that Tel-A-Sign conspired with others to induce Slater by fraud to enter the franchise agreement. It suggests that if given full opportuni-

---

1. Coin-operated devices which exhibit three-minute sound film selections in color for 25 cents per play.

2. The defendants are Tel-A-Sign, Scopitone, Synchro, the president of Tel-A-Sign, Malnik, Teran, and fourteen others.

ty for discovery in the New York action it might develop such proof. The only reasons it offers for thinking so are that Tel-A-Sign purchased Scopitone just after the franchise agreement was executed and thus presumably became the beneficiary of any fraud; that it disclosed to its stockholders, in seeking their approval of the purchase, the existence of the franchise agreement and the commission paid by Scopitone to Teran; and that, as Slater claims, the negotiations for the Tel-A-Sign purchase began before the conclusion of the franchise agreement. The referee heard the testimony of Mr. Steiger, who had acted for Tel-A-Sign in the negotiations, and his testimony, if believed, completely refuted Slater's claim so far as Tel-A-Sign was concerned.

We find ample support for the referee's findings that Slater and Scopitone reached their agreement March 27, although not formally executed until April 10; that there were no negotiations between representatives of Tel-A-Sign and representatives of Scopitone or Synchro before April 3; that no one on Tel-A-Sign's behalf ever met or had conversations with Teran, nor conspired with anyone to defraud Slater, nor made, knew of, or encouraged any false representation to Slater, nor withheld information; that there is no evidence that Tel-A-Sign or any of its representatives had any dealing with any other defendant relating to a scheme to defraud Slater; and that Slater did not complain that Tel-A-Sign was a party to a scheme to defraud Slater until three years after the transaction.

In sum, the possibility that leisurely pursuit of the New York action would produce evidence to refute Mr. Steiger's testimony and change the picture is wildly remote, and permitting such leisurely pursuit would destroy an opportunity for rehabilitation of a debtor in the bankruptcy court. We can find no abuse of discretion in the referee's election to decide that the fraud claim against Tel-A-Sign has no merit and to enjoin its prosecution.

We are aware of no decision closely in point as to the propriety of the referee's action. Most of those cited by counsel involve ordinary bankruptcy, and there, in theory at least, the effectiveness of a discharge is not impaired by the prosecution of a claim for a non-dischargeable liability.[3] The bankrupt's opportunity to plead his discharge in the independent action and to show that the claim was dischargeable is ordinarily an adequate remedy.[4] The bankruptcy court does, however, have power to enjoin prosecution of a proceeding in another court in order to protect the effectiveness of the discharge where there are unusual circumstances rendering the bankrupt's remedy in the other court inadequate.[5] And courts have recognized unusual circumstances making it proper for the bankruptcy court to enjoin prosecution of a claim which is asserted to be non-dischargeable.[6]

Counsel for Slater argues here that Tel-A-Sign had an adequate remedy in the New York action. This may well be true if the proceedings were an ordinary bankruptcy. That which makes the present case different, however, is that

3. See In re Alvino (2d Cir., 1940), 111 F. 2d 642; In re Redwood Furniture Company (W.D.N.C., 1965), 248 F.Supp. 228; In re Gadansky (E.D.N.Y., 1965), 249 F.Supp. 114.

4. Ibid, note 3, and Greenfield v. Tuccillo (2d Cir., 1942), 129 F.2d 854; In re Armour (7th Cir., 1951), 186 F.2d 503; In re Courbat (N.D.N.Y., 1967), 274 F. Supp. 1.

5. Local Loan Co. v. Hunt (1934), 292 U.S. 234, 241, 54 S.Ct. 695, 78 L.Ed. 1230, 1233.

6. State Finance Company v. Morrow (10th Cir., 1954), 216 F.2d 676, 680; Personal Industrial Loan Corporation v. Forgay (10th Cir., 1957), 240 F.2d 18; White v. Public Loan Corporation (8th Cir., 1957), 247 F.2d 601 (finding no unusual circumstances in the case as presented, but without prejudice to further showing); Martin v. Rosenbaum (9th Cir., 1964), 329 F.2d 817.

the mere pendency of so substantial a non-dischargeable claim frustrates the purpose of the arrangement proceeding. And where it appears as surely as it does in this record that the New York action lacks merit as to Tel-A-Sign, we think that it is within the power and properly within the discretion of the bankruptcy court to enjoin Slater from prosecuting it.[7]

The judgment of the district court, affirming the order of the referee, is affirmed.

---

7. See Continental Ill. N. B. & T. Co. of Chicago v. C. R. I. & P. Co. (1935), 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, upholding, in a reorganization proceeding, the power of the court to enjoin otherwise proper sales of securities because "the menace of impending sales of the collateral would seriously embarrass and probably prevent the formulation and consummation of a plan of reorganization." p. 678, 55 S.Ct. p. 607.