**In re Albert Chernick, Bankrupt.**

**Albert CHERNICK, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 73-1751.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1974.

Decided March 20, 1974.

Charles G. Levy, Chicago, Ill., for appellant.

James R. Thompson, U. S. Atty., Paul F. Stack, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before KILEY, Senior Circuit Judge, SPRECHER, Circuit Judge, and JAMESON, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal involves the effect of a 1968 default judgment on the section

---

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

17(c)(2) [1] proceeding to determine dischargeability of the debt underlying the judgment.

This is Chernick's third bankruptcy proceeding. The first was in 1956 and is not involved in this case. The second petition was filed by Chernick and his wife Lois in 1962. The United States filed claims in the 1962 proceeding for losses resulting from six federally insured loans made to the Chernicks by various savings institutions. The Chernicks were given a general discharge in 1964.

In 1967 the Chernicks were indicted for violations of federal law in submitting false applications for three of the loans scheduled in the 1962 proceeding and another loan obtained in 1966. On June 18, 1969, Chernick pled guilty to one count involving a 1962 loan. His wife pled guilty to all four counts.

On July 31, 1968, the United States filed a civil complaint dealing with all six loans scheduled in the 1962 bankruptcy. The complaint charged that for each loan the Chernicks had submitted "false, fictitious and fraudulent" credit applications which failed to list several outstanding obligations, including other FHA loans. It also alleged that the banks relied on the false statements in granting the loans. The complaint alleged that the Government had paid the lending institutions $6,851.26 following the Chernicks' failure to repay the loans.

The Chernicks were served with summons but failed to appear or answer. On September 28, 1968, the district judge entered a default judgment in the amount of $25,702.52 plus costs of $44.-60. The amount of the judgment was calculated by doubling the amount of the original losses and adding a $2,000 forfeiture for each of the six counts.[2]

In 1972 Chernick again filed a petition in bankruptcy. An amendment to the petition listed the United States as a creditor in the amount of the 1968 default judgment. As creditors have been required to do since the 1970 amendment,[3] the Government filed an application to determine whether the debt was dischargeable under section 17(a)(2). The Government relied on the complaint and judgment in the 1968 suit as proof that the loans were "liabilities . . . for obtaining money or property on credit . . . in reliance upon a materially false statement in writing respecting his financial condition made . . . with intent to deceive. . . ." 11 U.S.C. § 35(a)(2). The referee in bankruptcy denied the United States' application and discharged the debt. On review, the district court held the referee's order was erroneous, but did not decide whether the debt was dischargeable.

The significance of the 1968 judgment becomes apparent in the context of the pre-1970 practice of determining the dischargeability of specific debts in collateral proceedings following the general discharge in bankruptcy under section 17(a)(2). A creditor might sue a discharged bankrupt in state court; the bankrupt would plead the discharge as a defense. The plaintiff then had the burden of proving that the claim was excluded under section 17 and was not discharged by the bankruptcy. Harrison v. Donnelly, 153 F.2d 588 (8th Cir. 1946). Since Chernick had been granted a general discharge in the 1962 bankruptcy, the United States' suit in 1968 was an attempt to have its claim found nondis-

---

1. Effective Dec. 18, 1970, 11 U.S.C. § 35(c)(2) provides in part:

   A creditor who contends that his debt is not discharged under clause (2), (4), or (8) or subdivision (a) of this section must file an application for a determination of dischargeability within the time fixed by the court pursuant to paragraph (1) of subdivision (b) of section 32 of this title

and, unless an application is timely filed, the debt shall be discharged.

2. The complaint was based on 31 U.S.C. § 231, "liability of persons making false claims," which provides for double damages and forfeitures. A 1966 loan was charged in count 6, but the judgment covered only the 1962 loans alleged in counts 1–5 and 7.

3. See note 1, supra.

chargeable because of the false credit applications. Chernick could have used the 1962 general discharge as a defense, but he failed to answer. While the default judgment re-established Chernick's liability, it also established fraud on his part and the nondischargeability of the Government's claim.

The referee refused to consider the 1968 judgment as res judicata in the 17(c)(2) proceeding. He said, "[T]he law after the 1970 amendment is that a debtor is barred by res judicata or collateral estoppel at a hearing on dischargeability for fraud only if he contested and actually litigated the fraud issue in the previous case." Reference to the authorities he cites, however, shows that the authors always are discussing a pre-bankruptcy case brought to settle liability on the claim. *E. g.,* 1A Collier on Bankruptcy 1650.1 (14th ed. 1973). The 1968 suit against Chernick was a post-bankruptcy case in which liability had already been established but exclusion from discharge had not. By awarding damages to the United States, the judgment made the claim nondischargeable and thus settled the identical issue the referee had before him in the 17(c)(2) proceeding.

The district court was correct in concluding that the 1968 judgment was res judicata. He should then have remanded the case to the referee for an examination of the 1968 suit or looked at the record himself. Our examination of the 1968 complaint and judgment [4] convinces us that the effect of that case is a determination that the United States' claim is not discharged. The district court order is affirmed and the case is remanded to the referee for entry of an order that the debt of $25,747.12 is not dischargeable.

Affirmed.

---

4. In looking at the entire record of the default case, we are following the pre-1970 practice of bankruptcy courts when they elected to determine the dischargeability of a particular debt. If the debt had been reduced to judgment before the bankruptcy, the court discerned the character of the debt from the entire record in the other court. Harrison v. Donnelly, 153 F.2d 588 (8th Cir. 1946) ; *see also* Robertson v. Interstate Securities Co., 435 F.2d 784 (8th Cir. 1971) ; Martin v. Rosenbaum, 329 F.2d 817 (9th Cir. 1964) ; In re Johnson, 323 F.2d 574 (3d Cir. 1963) ; In re Stark, 50 F.2d 260 (S.D. N.Y.1931).

This procedure was appropriate before 1970 because the bankruptcy court did not have exclusive jurisdiction to determine dischargeability; it could accept findings of other courts on issues relevant to dischargeability. The practice may be improper under the 1970 amendment if the bankrupt wishes to contest factual or legal findings of the other court. Here Chernick cannot contest those issues because he waived the right to do so in a court that in 1968 had jurisdiction to determine dischargeability of the debt in a post-bankruptcy case.