In the Matter of George Beverly **PIGGE, Bankrupt.**

Viola M. **HOVERMALE, Appellant,**

v.

George Beverly **PIGGE, Appellee.**

No. 75–1888.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1976.

Decided June 11, 1976.

Robert E. Swan, Fairfax, Va., for appellant.

Gordon P. Peyton, Alexandria, Va., for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The District Court affirmed a denial by the Bankruptcy Court of a creditor's objection to the dischargeability of a judgment under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2). The creditor has appealed. We reverse and remand with directions.

Pigge, the bankrupt, induced the objecting creditor Hovermale, to advance him rather large sums of money.[1] Following the cooling of their unusual relationship, Hovermale sued Pigge in the Virginia Circuit Court in separate counts on both contract and fraud. The State Court, finding that Pigge owed Hovermale $20,190, granted Hovermale judgment in that amount on the contract count. After the entry of such judgment, Pigge filed a voluntary petition in bankruptcy. When he applied for discharge, Hovermale objected, so far as her judgment was concerned, on the ground, *inter alia* that such judgment was based on a debt or liability for obtaining money "by false pretenses or false representations" as defined in § 17(a)(2). The Bankruptcy Judge dismissed the objection to non-dischargeability because of (1) insufficiency of any evidence showing fraud, and (2) the *res judicata* effect of the State Court judg-

---

1. In her complaint in the Bankruptcy Court, Mrs. Hovermale described the situation somewhat forcefully: "That during the foregoing period he [Pigge] carried on an intimate sexual relationship with the Plaintiff and artfully and ruthlessly extracted her life's savings from her in promises of putting it into his business and amply rewarding her therefor in the future."

ment, which made no finding of fraud. The District Court, without hearing any evidence, affirmed.

■ The bankrupt raises the threshold question that this Court lacks jurisdiction because the objecting creditor's notice of appeal to the District Court was not timely filed. Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c),[2] and Bankruptcy Rule 802(a)[3] provide for the filing of the notice with the Bankruptcy Court within ten days of the order appealed from. In this instance, the notice of appeal was not received until December 30, 1974, more than ten days after the entry of the order appealed from. However, the record shows that the dissenting creditor's counsel placed the notice in the mails on December 27, 1974. Rule 906(e) provides that "notice by mail is complete upon mailing." Since the Bankruptcy Judge's order was entered on December 17, 1974, it is clear that the notice of appeal was timely filed.[4]

■ The crucial issue on the merits is whether a Bankruptcy Court, in a proceeding to determine the dischargeability of a provable debt, as represented by a state court judgment, may go beyond the record of the state court judgment and inquire into the circumstances surrounding the contracting of the debt on which the judgment was based, to determine dischargeability. The bankrupt argues that the state court judgment was based on the contract count, which fixed the nature of the objecting creditor's claim for purposes of dischargeability in bankruptcy. Specifically, he took the position that the Bankruptcy Court could not go behind the state court judgment or consider any evidence aliunde the state record, in ruling on dischargeability of the dissenting creditor's debt.

Section 17(a)(2) of the Bankruptcy Act declares that the exclusive jurisdiction to determine whether a debt is dischargeable is vested in the Bankruptcy Court. And when that debt has been previously reduced to judgment in a state court, the Bankruptcy Court, in the exercise of its exclusive jurisdiction to determine dischargeability of the debt may, contrary to the position of the bankrupt, look behind the judgment itself at the nature of the debt for which judgment was entered. In so doing, it is not confined to the record in the court in which the judgment was entered; it may, when necessary to ascertain the nature of the debt on which the judgment was entered, admit and consider extrinsic evidence. This is clearly indicated in 1A *Collier on Bankruptcy* § 17.16 (14th ed. 1975), where the author states:

> "The judgment in question is based on a liability that falls within the scope of Sec. 17a(2). When it reaches the bankruptcy court the issue is one of dischargeability and not one of liability. While liability may have been adjudicated, the non-dischargeability of the liability has not been adjudicated. For the purposes of determining the dischargeability of the liability, the bankruptcy court should be able to base its findings on the facts relevant under Sec. 17a(2) and not be bound by the findings of the state court. Furthermore, if the bankrupt were barred from relitigating those issues, the effect of the 1970 legislation of strengthening the discharge in bankruptcy would be greatly dissipated."

And that has been expressly held in *In re Johnson* (3d Cir. 1963) 323 F.2d 574, 578; *Martin v. Rosenbaum* (9th Cir. 1964) 329 F.2d 817, 820; *Greenfield v. Tuccillo* (2d Cir. 1942) 129 F.2d 854, 856; *Fierman v.*

2. "A person aggrieved by an order of a referee may, within ten days after the entry thereof * * *, file with the referee a petition for review of such order * * *."

3. "The notice of appeal shall be filed with the referee within 10 days of the date of the entry of the judgment or order appealed from."

4. In cases involving a technical and inadvertent late filing, courts have found the filing to be timely. *See, e. g. In re Mountjoy* (W.D.Mo. 1973) 368 F.Supp. 1087, 1089. Untimely filing is excused "if the party is fairly and in fact prevented from complying by circumstances completely beyond his control." *In Re Mutual Leasing Corp.* (5th Cir.1970) 424 F.2d 999, 1000.

*Lazarus* (E.D.Pa.1973) 361 F.Supp. 477, 480, *aff'd* (3d Cir.) 493 F.2d 1400.

In *In Re Johnson, supra,* the Court said:

"Since the Bankruptcy Act is specific as to non-dischargeable debts, it was permissible, even necessary in the circumstances, for the bankruptcy court to inquire into the nature of the liability which had been reduced to judgment in order to determine whether it falls within the Act, and further to inquire into the circumstances surrounding the creation of the debt or the entry of the judgment."

*Fierman v. Lazarus, supra,* is quite similar to this case. There the Court summarized its conclusion thus:

"In the instant case, where a judgment is involved and bankruptcy is pleaded as a bar to plaintiff's action on the judgment, the court is not concluded by the form of judgment, by recitals of the judgment, by the form of action nor even by the allegations of plaintiff's complaint but may resort to and examine the entire record to determine the character of the claim and whether it comes within the purview of 11 U.S.C. § 35. *In Re Riley,* 266 App.Div. 160, 43 N.Y.S.2d 753, appeal dismissed, 294 N.Y. 825, 62 N.E.2d 245 (1943); *Personal Finance Corporation v. Robinson,* 27 N.Y.S.2d 6 (Sup.1941). Furthermore, in determining the nature of defendants' original liability, the Court may in context of the instant case, hear extrinsic evidence to aid in that determination. *Martin v. Rosenbaum,* 329 F.2d 817 (9th Cir. 1964); *Greenfield v. Tuccillo,* 129 F.2d 854 (2nd Cir. 1942); *Welsh v. Old Dominion Bank,* 229 A.2d 455 (D.C.App. 1967); *Levin v. Singer,* 227 Md. 47, 175 A.2d 423 (1961); *National Surety Co. v. Lanza,* 42 N.Y.S.2d 370 (Sup.1943). Neither the judgment of the Supreme Court of New York or minute order granting the judgment specified it was based on fraud; nor did either of those documents refer to fraud in any way. However, we have looked beyond the judgment and examined the underlying cause of action in determining the nature of defendants'

liability. *In Re Johnson,* 323 F.2d 574 (3rd Cir. 1963). Moreover, we have investigated the facts which form the basis of the judgment; *Proctor Securities Corp. v. Handler,* 7 Misc.2d 9, 162 N.Y.S.2d 209 (1957); *Belsey v. Deveraux,* 150 Misc. 337, 269 N.Y.S. 127 (1934), aff'd, 242 App.Div. 603, 271 N.Y.S. 1018 (1934); as a result, the Court finds that the judgment recovered in the Supreme Court of New York was based upon the fraud of defendants."

█ Both the Bankruptcy Court and the District Court, however, sustained the bankrupt's contention and denied the objecting creditor the right to offer extrinsic evidence to establish that her debt, for which she had secured judgment in the State Court, was non-dischargeable in bankruptcy. Their reasoning was that the State Court judgment was based on contract, and the failure to grant judgment on the second count was a ruling, by implication, that the record did not authorize judgment on the fraud count. We are unable to agree with this reasoning.

When the State Court found that the bankrupt owed the creditor a sum of money, which represented the objecting creditor's claim, it was unnecessary for the State Court in the action before it to consider the fraud count in order to dispose of the case and to grant judgment. That it would seem is what the State Court did and all that it did. It did not—in fact, it could not—determine the dischargeability in bankruptcy of the debt on which it granted judgment; that issue, the issue of dischargeability, could be litigated and determined only in the Bankruptcy Court, and that required an inquiry into the nature of the debt on which the state court judgment itself rested. In determining that issue, the Bankruptcy Court, as we have said, may go behind the judgment on which the debt was based, examine the full record in the proceedings in which the judgment was entered, and hear extrinsic evidence to aid in reaching its conclusion. *Martin v. Rosenbaum, supra* (329 F.2d at 820); *Fierman v. Lazarus, supra* (361 F.Supp. at 480).

The District Court apparently felt that in any event collateral estoppel would preclude the admission of any evidence aliunde the record in the State Court. It assumed, it seems, that by failing to pass on the fraud count, the State Court had impliedly ruled that the objecting creditor's debt was not grounded on fraud and accordingly the objecting creditor was collaterally estopped to contest that ruling. It is well settled, though, that the only issues "which have been necessarily litigated" in the State Court are entitled to *res judicata* and collateral estoppel effect.[5] The issue of fraud was not litigated in the State Court. The creditor should not be bound by the form of the judgment. The actual character of the liability, rather than the form of the action or style of the judgment should control. The objectives of the 1970 amendments are not frustrated "when it is clear that the creditor has been defrauded or victimized and has merely proceeded in ordinary course to take judgment in the simplest form."[6]

The judgment of the District Court is reversed and the case is remanded to the District Court, with instructions to accord the parties a hearing and to admit evidence on the nature of the objecting creditor's debt on which her judgment rests in determining the dischargeability of such debt in bankruptcy.

REVERSED AND REMANDED WITH DIRECTIONS.

---

5. *National Homes Corporation v. Lester Industries, Inc.* (W.D.Va.1972) 336 F.Supp. 644, 648; *Beneficial Loan Co. v. Noble* (10th Cir. 1942) 129 F.2d 425, 427.

6. *Remington on Bankruptcy* § 3324 (6th ed. 1955); *see, Levin v. Singer* (1961) 227 Md. 47, 175 A.2d 423.