In re John HOUTMAN and Gladys Irene Houtman, Bankrupts.

John HOUTMAN and Gladys Irene Houtman, Petitioners-Appellants,

v.

Edgar F. MANN and Edna M. Mann, Creditors-Appellees.

No. 76–3611.

United States Court of Appeals, Ninth Circuit.

Jan. 25, 1978.

Richard K. Park, Sacramento, Cal., for petitioners-appellants.

James A. Thompson, Redwood City, Cal., for creditors-appellees.

Before HUFSTEDLER and SNEED, Circuit Judges, and RENFREW,* District Judge.

This is an appeal from an order of the district court affirming a decision of the bankruptcy judge that a 1971 state court judgment for $55,000 against the appellants was nondischargeable in bankruptcy. The bankruptcy judge found that the judgment rested on a transaction "so tainted by fraud as to render it [the judgment] a nondischargeable obligation." Presumably this meant that the judgment represented a "liability for obtaining money or property by false pretenses or false representations" and was therefore nondischargeable under § 17(a)(2) of the Bankruptcy Act. 11 U.S.C. § 35(a)(2). We affirm.

## I. *Facts.*

The Manns, appellees and judgment creditors of the bankrupts, were awarded both compensatory and punitive damages in a suit brought against the Houtmans in the El Dorado County Superior Court in California in November, 1971. This judgment

---

* Hon. Charles B. Renfrew, United States District Court Judge, for the Northern District of California, sitting by designation.

was awarded after a jury trial on a complaint alleging fraud and misrepresentation resulting from a three-party real estate transaction. On June 9, 1972 both Houtmans filed petitions for bankruptcy. Each listed the Manns in the proper schedule as unsecured creditors. On October 4, 1972, the Manns, pursuant to the bankruptcy rules then in effect, filed an application to determine whether their judgment debt was nondischargeable. On January 11, 1973, the bankruptcy judge held a hearing on this application, at which time he examined the complaint, the jury instructions and the judgment contained in the state court record but, although offered by the Manns, refused to consider the pretrial order and trial transcript. He also heard testimony from the appellants in which they denied the underlying transaction involved fraud. Thereafter, he orally announced that the debt was dischargeable. The Manns filed a notice of appeal which, at the suggestion of the bankruptcy judge, was withdrawn to permit him to reconsider the matter. On May 10, 1974, he issued new findings of fact and conclusions of law holding that the debt was nondischargeable because of fraud. It is these findings and conclusions that the district court affirmed.

## II. The Proper Role of State Court Proceedings.

■ We begin by recognizing that we may not set aside the findings of fact of the bankruptcy judge which have been af-

firmed by the district court unless such findings are clearly erroneous. *Coen v. Zick*, 458 F.2d 326 (9th Cir. 1972). The appellants do not dispute this rule; their argument is that the bankruptcy judge improperly gave conclusive weight to the documents depicting the state court proceedings and refrained from exercising his exclusive jurisdiction to determine the dischargeability of debt as required by section 17(c)(2) of the Bankruptcy Act as amended in 1970.[1]

■ To support this contention appellants point to the bankruptcy judge's oral order holding the debt dischargeable and his recantation, which appellants insist can only be explained by the bankruptcy judge believing that, under the authority of *Coen v. Zick, supra*, he was bound by the state court proceedings to find the debt not dischargeable. Were we to accept the view that the bankruptcy judge considered himself compelled by the state court documents presented to him to find the debt not dischargeable we would agree that the district court's order would have to be reversed. The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act.[2] This does

1. This section now provides that "[a] creditor who contends that his debt is not discharged under clause (2), (4) or (8) of subdivision (a) of this section *must* file an application for a determination of dischargeability . . . and, unless an application is timely filed, the debt shall be discharged." (Emphasis added). By requiring action in the bankruptcy court to secure a determination of nondischargeability, this section effectively precludes any concurrent action by state courts. *See* 1A Collier on Bankruptcy ¶ 17.28A[3] (1976). The legislative history explicitly states that one of the objectives of the amendments was to put "the matter of dischargeability of [this] type of debt within the exclusive jurisdiction of the bankruptcy court." H.Rep.No.91–1502, 91st Cong., 2d Sess. 2 (1970), U.S.Code Cong. & Admin.News 1970, p. 4156.

2. We acknowledge that a grant of exclusive jurisdiction to federal courts does not automatically preclude the application of the doctrine of collateral estoppel. *Becher v. Contoure Laboratories*, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1928); *cf. Clark v. Watchie*, 513 F.2d 994 (9th Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). However, we believe that collateral estoppel is inappropriate when "a new determination is warranted . . . by factors relating to the allocation of jurisdiction between [the two courts]." Restatement 2d of Judgments § 68.1(c) [Tent. Draft No. 4, 1977]; *cf. Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.), *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955) (refusal to give collateral estoppel effect to state court finding of no antitrust violation because of need for "an untrammeled jurisdiction of the federal courts." *Id.* at 189).

not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy judge as establishing the nondischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts which the creditors contend are described in section 17(a)(2), (4), and (8). *See In re Mountjoy,* 368 F.Supp. 1087, 1096 (W.D.Mo.1973).

Nor do we believe that *Coen v. Zick, supra,* is inconsistent with our position even though it dealt with a bankruptcy proceeding and a judgment debt originating prior to the 1970 Amendments. In that case both the bankrupt and the judgment creditor chose to rest their case on "the record of the proceedings in the state court, including the complaint, the amended answer, the instructions numbered 6 and 7 with respect to punitive damages and the amended judgment in favor of appellants awarding $5,100 as compensatory damages and the sum of $1,000 as punitive damages." 458 F.2d at 329. Under these circumstances the court was quite justified in treating the above documents as true and looking only to them to determine whether the findings of the bankruptcy referee, as affirmed by the district court, were clearly erroneous. Should *Coen v. Zick* be regarded as holding more than this, its more expansive reading must be considered as qualified by the enactment of the 1970 Amendments.

■ Returning to the facts of the case before us, we are convinced that the bankruptcy judge did not consider himself bound by the state court proceedings to find the Mann judgment debt nondischargeable. Although he should have accepted the offer of the pretrial order and trial transcript and might well have better articulated the basis of his findings, we hold that under the circumstances of this case, one in which oral testimony of bankrupts was heard, the following findings indicate that the bankruptcy judge did not consider himself bound by the state court proceedings;

"4. That the Bankruptcy Court should consider the State Court proceedings resulting in a judgment based upon fraud to determine if the State Court has proceeded in such a manner and has found facts in its determination that would convince the Bankruptcy Court considering these facts from its exclusive view with relation to bankruptcy, that the transaction was so tainted by fraud as to render it a nondischargeable obligation;

5. The Court has reviewed the State Court record and finds that the evidence presented, if heard directly by it, would support the contention that the obligation is nondischargeable because of the findings of fraud."

These findings indicate that the bankruptcy judge evaluated the facts before him to determine nondischargeability and after such evaluation concluded that the judgment debt of the Mann's was not dischargeable.

Congress, in enacting the 1970 Amendments to the Bankruptcy Act, felt that

One of the strongest arguments in support of the bill is that, . . . a single court, to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problems in particular cases . . . . Since this is a Federal statute, the Federal courts necessarily have the final word as to the meaning of any term contained therein. S.Rep.No.91–1173, 91st Cong., 2d Sess. (1970) at 9.

To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

Our view is supported by action in other circuits. The Third Circuit refused to give collateral estoppel effect to a state court "judgment in fraud" even prior to the 1970 amendments. *In re Johnson,* 323 F.2d 574 (3rd Cir. 1963). The Fourth Circuit has emphasized that the bankruptcy court can look beyond the prior judgment and even hear new evidence at the hearing on dischargeability. *Matter of Pigge,* 539 F.2d 369 (4th Cir. 1976).

We must determine not only that the bankruptcy judge applied the correct legal standard to the facts before him but also that his application was not clearly erroneous. We hold that his findings of fact were not clearly erroneous.[3] A state court judgment based on fraud is sufficient to establish a *prima facie* case that it represents a debt nondischargeable under § 17(a)(2). As we have discussed, see pp. 653–654 *supra*, the bankrupt is entitled to rebut this *prima facie* case, but the conclusion that the Houtmans failed to do so is not clearly erroneous. In his testimony before the bankruptcy judge, Mr. Houtman admitted that his testimony there duplicated his testimony in state court, which was obviously disbelieved. His testimony that he lost in state court because his lawyer failed to prepare adequately for trial due to the lawyer's confidence in a statute-of-limitations defense is conclusory, uncorroborated by his attorney, and belied by the bankrupts' failure to introduce any new evidence before the bankruptcy judge. Under the circumstances, the judge was not required to find that the state court judgment was unreliable, and his finding of fact that the Houtmans' "obligation is nondischargeable because of the finding of fraud" in state court is supported by the evidence.

### III. *The Meaning of Scienter Under Section 17(a)(2).*

There remains but one possible error of law by the bankruptcy judge which we should consider. That is whether the type of fraud on which the judgment debt rests is that described in section 17(a)(2) of the Bankruptcy Act.[4] We have adopted a five-part test for determining when a debt is nondischargeable under this provision. That test is:

"(1) the debtor made the representations;

(2) *That at the time he knew they were false;*

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." (Italics supplied).

*In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975).

The bankruptcy judge looked at the jury instructions given in the state court trial as indicative of the specific facts found by the jury. These instructions put all five issues specified in the *Taylor* test before the jury. However, the instructions given in the state case allowed the jury to convict if the representation was "known to be false or recklessly made without knowing whether it is true or false." The bankruptcy judge accepted this as an appropriate formulation of the knowledge element, and, as indicated above, accepted "the contention that the obligation is nondischargeable because of the finding of fraud." Therefore, we must decide whether the second element of the

---

3. The just-quoted fifth finding of fact creates some uncertainty about which facts the bankruptcy judge relied on to support his determination that the Houtmans owed money to the Manns because of Mr. Houtman's fraud. Since most of the evidence presented in state court was not presented in federal court, even by way of a transcript, it is difficult to understand how the bankruptcy judge could know that this evidence, "if heard directly by [him], would support the contention that the obligation is nondischargeable because of the findings of fraud." This finding, however, cannot be isolated from its context, and when the whole record before the bankruptcy judge is considered, it becomes reasonably clear what he was talking about.

4. "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

. . . . .

(2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another."

*Taylor* test can be satisfied only by actual knowledge or whether reckless disregard for the truth also satisfies this requirement.

We hold that the latter is sufficient. This conclusion is suggested by the very case from which the five-part *Taylor* test was derived, *Sweet v. Ritter Finance Company,* 263 F.Supp. 540 (W.D.Va.1967). There the court actually applied a reckless disregard standard. An illiterate bankrupt was accused of making a false representation on the basis of a statement prepared by his wife which he signed. The court found that there was no evidence of recklessness in Sweet's reliance on his wife. *Id.* at 544. The clear implication is that a showing of recklessness would have been sufficient to make the debt nondischargeable even if the bankrupt had had no actual knowledge of the falsity.

The Supreme Court decision in *Morimura, Arai & Company v. Taback,* 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929) provides further support for our holding. In that case the Court held that "reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct" was sufficient to establish the knowledge element under a provision of the Bankruptcy Act then current which completely barred a discharge of all debts if the bankrupt had made a materially false statement in order to obtain property on credit. *Id.* at 33, 49 S.Ct. at 215. Since the 1960 amendment to the Bankruptcy Act, use of a materially false statement in order to obtain credit is no longer a complete bar to discharge for individual bankrupts, but is included in § 17(a)(2) along with false representations as one of the grounds which will render an individual debt nondischargeable. The close statutory relationship of these two concepts now suggests that a similar definition of knowledge would be appropriate. Further, a strict reading of the knowledge element of the false representation exception would have the incongruous effect of imposing a stricter standard for exempting a single debt from discharge than formerly was required to completely bar discharge of all debts.

In addition, the scienter requirement in the tort of misrepresentation generally has been interpreted to include recklessness. *See* W. Prosser, Torts, § 701 (4th Ed. 1971). The reasons for inclusion, *viz.* the difficulty in distinguishing knowledge from reckless disregard, and to discourage the shunning of truth to preserve the defense of no scienter, are applicable with equal force in the bankruptcy context.

Finally, there are dicta in other decisions of this circuit which suggest that our interpretation is proper. *Matter of Nelson,* 561 F.2d 1342 (1977) ("knew or should have known"); *Wright v. Lubinko,* 515 F.2d 260 (9th Cir. 1975) ("fraudulent intent or reckless disregard for the truth tantamount to wilful misrepresentation").

We recognize that exceptions to dischargeability are to be strictly construed *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). A canon of interpretation adjuring strictness is not, however, a justification for abandoning good sense. It makes good sense to hold that either actual knowledge of the falsity of a statement, or reckless disregard for its truth, satisfies the scienter requirement for nondischargeability of a debt under § 17(a)(2). We so hold.

AFFIRMED.

HUFSTEDLER, Circuit Judge, concurring and dissenting:

I have no quarrel with the majority's enunciation of the controlling principles of law, but I disagree with the application of those principles in this case. I would remand the case to the district court for reconsideration in the light of the legal principles stated in the majority opinion.

Upon the record, it is impossible to determine whether either the bankruptcy judge or the district court was under the erroneous impression that the state court judgment foreclosed the bankruptcy court and the district court from independently determining dischargeability of the obligation by application of the principles of *res judicata*

(issue preclusion, formerly known as collateral estoppel). The courts below appear to have relied upon the teaching of *Coen v. Zick* (9th Cir. 1972) 458 F.2d 326, in which we stated: "[t]he only unresolved inquiry is whether that record [of the state court] taken as true constitutes sufficient proof to establish that the judgment obtained by appellant against the bankrupts in the state court was based upon willful and malicious acts of Coen. We find that it was conclusive of the nature of the proceeding and of the basis upon which the judgment was obtained in the state court." (458 F.2d at 328.)

As the majority observes, the conclusive effect given by *Coen* to the state court judgment could not survive the 1970 amendments to the Bankruptcy Act. We cannot ascertain from the record before us whether the bankruptcy judge would have reached the same dischargeability conclusion if he had been aware that the prior state court judgment did not foreclose the non-dischargeability question and that he was required to make an independent determination whether the judgment represented a "liability for obtaining money or property by false pretenses or false representations" under Section 17(a)(2) of the Bankruptcy Act, based upon the record of the state court action and upon the testimony before him in the bankruptcy proceedings.

Although I agree that the clearly erroneous standard applies to appellate review of the bankruptcy judge's findings, that principle is prematurely applied in this case. Although we cannot be sure from the record, the bankruptcy judge appears to have assumed that, under *Coen*, preclusive effect had to be given to the state court proceedings. Upon that premise, of course, the "findings" are no more than legal conclusions, and those conclusions are erroneous for the reasons stated in the majority opinion.

Accordingly, I would vacate and remand the cause to the district court for reconsideration in the light of the majority opinion.