In re Larry Paul BONEFAS and Jolene Kay Bonefas, Debtors.

J.C. PENNEY COMPANY, INC., Plaintiff,

v.

Larry Paul BONEFAS and Jolene Kay Bonefas, Defendants.

Bankruptcy No. 81–02309.
Adv. No. 81–0837.

United States Bankruptcy Court, N.D. Iowa.

May 11, 1984.

George Weilein, Waterloo, Iowa, for plaintiff.

John W. Pieters, Waterloo, Iowa, for defendants-debtors.

*Findings of Fact, Conclusions of Law, and ORDER Sustaining in Part and Denying and Dismissing in Part 11 U.S.C. § 523(a)(2) Dischargeability Complaint*

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is an adversary proceeding regarding the dischargeability of a consumer debt owed to the plaintiff/creditor, J.C. Penney Company, Inc. (hereafter "creditor") by the defendants/debtors, Larry Paul and Jolene Kay

Bonefas (hereafter "debtor and wife"). On October 9, 1981, the debtor and his wife filed a voluntary chapter 7 petition. Among the assets scheduled was a debt for rings, valued at $1,095.92, purchased from the creditor. The creditor filed a complaint under § 523(a)(2)(A) and § 523(a)(2)(B) claiming that a discharge of the debtor's consumer debt should be excepted because the debt was incurred fraudulently. On January 13, 1982, the debtor and his wife filed a counterclaim requesting imposition of court costs and attorney's fees against the creditor pursuant to § 523(d). At the conclusion of the creditor's case the debtor and his wife moved for a directed verdict. The Court granted a directed verdict for the wife under § 523(a)(2)(B). The Court took the remaining portions of this complaint under advisement. The parties before the court were: Attorney George Weilein, Waterloo, Iowa, for the creditor, and Attorney John S. Pieters, Waterloo, Iowa, for the debtor and wife. Being fully advised, the Court makes the following Findings of Fact, Conclusions of Law and Orders.

## FINDINGS OF FACT

1. On July 15, 1981, the debtor ordered an engagement ring and a wedding ring, valued at $1,095.92, from the creditor. The debtor and his wife had been married three years prior to the order.

2. On August 24, 1981, the debtor went to pick up the rings. At that time the debtor was told he had insufficient credit to purchase the rings.

3. On that same day, August 24, 1981, the debtor requested that his credit line be increased to allow for the purchase on his joint charge account. In support of his request, the debtor filled out and returned a form, supplied by the creditor. On the form, the debtor stated that he earned $1,700.00 monthly as an employee of Overhead Door. This information was false. In fact, the debtor had been laid off from Overhead Door since March 1981.

4. The debtor began full-time employment at Mod-Comp Homes in early August 1981, earning $688.00 monthly. The debtor was so employed when he took possession of the rings on August 24, 1981.

5. After filling out the form, the creditor asked the debtor certain information, including whether he was still employed at Overhead Door earning a monthly salary of $1,700.00. The debtor responded affirmatively.

6. On August 24, 1981, the debtor also paid $60.00 on his overdue credit balance after the creditor's employee told him such payment would enable him to place the order on the charge account.

7. As a result of the false information and the payment, on August 24, 1981, the creditor permitted the debtor to charge the rings on the charge account and to take possession of the rings.

8. The debtor's wife was unaware that the debtor had given false information. She was also unaware that the debtor was placing the purchase on the charge account.

9. On September 25, 1981, the creditor sent an account billing to the debtor requiring a minimum payment of $160.75. The debtor did not pay the bill.

10. Fifteen days later, on October 9, 1981, the debtor and his wife filed a Petition for Voluntary Bankruptcy.

## CONCLUSIONS OF LAW

1. A creditor seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A) or (B) must prove each element of those sections by clear and convincing evidence.

2. J.C. Penney Co., Inc., has failed to prove each of the elements by clear and convincing evidence with respect to its 11 U.S.C. § 523(a)(2)(B) Complaint.

3. J.C. Penney has proved each of the elements by clear and convincing evidence with respect to its 11 U.S.C. § 523(a)(2)(A) complaint.

4. A motion for a directed verdict will be granted when, after viewing the evidence and reasonable inferences, in the

light most favorable to the non-movant without assessing credibility, reasonable minds would not differ as to the conclusions of facts to be drawn.

5. Costs and fees should not be awarded because the creditor had sufficient cause to believe the debtor had received the consumer goods intending to file for bankruptcy.

## ORDERS

IT IS THEREFORE ORDERED that:

1. The debtor's motion for a directed verdict is denied.

2. Costs and fees are not awarded.

3. The debt owed to J.C. Penney Co., Inc., by Larry Paul Bonefas in the amount of $1,095.92 is excepted from the effect of discharge previously granted by this Court.

4. The Complaint filed herein by J.C. Penney Co., Inc., is sustained to the extent of Paragraph 3 above and denied and dismissed every other respect.

## MEMORANDUM

The creditor, J.C. Penney Company, Inc., is seeking to have a consumer debt for rings owed to it by the debtor and his wife, Larry Paul and Jolene Kay Bonefas, declared nondischargeable. The creditor alleges that the consumer debt should not be discharged because the debt was incurred fraudulently. The creditor's claims that the debtor (1) used a false financial statement which induced the creditor to extend credit for the rings, (2) knew he had insufficient income to purchase the rings when he purchased them, and (3) made the purchase in contemplation of filing a voluntary chapter 7 petition. In accordance with its claim, the creditor contends that the debtor violated 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B). The debtor and his wife filed a counterclaim against the creditor, requesting determination of dischargeability and court costs and attorney's fees pursuant to § 523(d). At the close of the creditor's case, the debtor and his wife moved for a directed verdict. The Court granted a directed verdict for the wife un-

der § 523(a)(2)(B). The Court took under advisement the § 523(a)(2)(B) issue. The Court also took under advisement the remaining portions of the creditor's complaint and the counterclaim of the debtor and his wife.

The Court must, therefore, determine the following: (1) whether § 523(a)(2)(A) and/or § 523(a)(2)(B) were violated; (2) whether the motion for a directed verdict should be granted; and (3) whether the debtor is entitled to court costs and attorney's fees.

### I. *Dischargeability Under § 523(a)(2)*

■ The Bankruptcy Code provides under 11 U.S.C. § 523(a)(2) that:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

The initial question to be answered for a § 523(a)(2) dischargeability complaint is whether the debtor actually obtained any money, property, services, or an extension, renewal or refinance of credit. It is undisputed that the debtor received credit which allowed him to receive the rings from the creditor. Therefore, it is necessary to determine if either § 523(a)(2)(A) or § 523(a)(2)(B) was violated.

### A. Section 523(a)(2)(B)

■ To sustain a § 523(a)(2)(B) complaint, a "statement in writing ... respecting the debtor's financial condition" must be involved. Each element in § 523(a)(2)(B) must be proved by the creditor by clear and convincing evidence. *In re Granovetter*, 29 B.R. 631, 639 (Bankr.E.D.N.Y.1983).

#### 1. Statement in Writing

Section 523(a)(2)(B) requires that there be "use of a statement in writing" respecting the debtor's financial condition. 11 U.S.C. § 523(a)(2)(B). Initially, the court must determine the amount of financial information that is necessary to qualify as a "statement in writing ... respecting the debtor's ... financial condition" for the purposes of § 523(a)(2)(B). Other courts examining this question proposed different tests. It has been the practice, however, that written representations as to a debtor's salary and other sources of income are representations of the debtor's financial condition. *See, e.g. In re Archangeli*, 6 B.R. 50, 52 (Bankr. D. Me.1980); *In re Posick*, 26 B.R. 499, 501 (Bankr.S.D.Fla. 1983). In cases where written statements have been held to be financial statements, such statements have contained numerous entries of income, assets and/or debts. From these cases, it appears that it has been these *combined entries* that constitute financial statements.

■ In the case at bar, the debtor stated that he made $1,700.00 monthly on the form provided by the creditor. This was the only entry regarding assets, liabilities and financial condition. This Court does not find that this single entry of income is sufficient to qualify as a "statement in writing ... respecting the debtor's ... financial condition" for the purposes of § 523(a)(2)(B). The creditor therefore has failed to shoulder its burden of proof with respect to its § 523(a)(2)(B) complaint.

### B. Section 523(a)(2)(A)

■ Having determined that § 523(a)(2)(B) is inapplicable, the court now applies § 523(a)(2)(A). The creditor alleges that the consumer debt was incurred fraudulently. The Court must specifically determine whether the debtor obtained the extension of credit by false pretense, false representation or actual fraud. 11 U.S.C. § 523(a)(2)(A). The creditor has the burden of proving these elements by clear and convincing evidence. *In re Newmark*, 20 B.R. 842, 853 (Bankr. E.D. N.Y.1982).

#### 1. False Pretenses and False Representation

■ To be a false representation under § 523(a)(2)(A), the representation must depict present or past facts. *See In re Simpson*, 29 B.R. 202, 208 (Bankr. N.D. Iowa1983). It is unnecessary, however, that a false representation be made in writing in order to except a debt from discharge under § 523(a)(2)(A). 3 *Collier on Bankruptcy*, ¶ 523.08, p. 523–42.

To meet its burden of proving false representation courts have required creditors to prove a five-prong test promulgated by the Ninth Circuit in *In re Houtman*, 568 F.2d 651 (9th Cir. 1978). The elements of the *Houtman* test are as follows: (1) debtor made false representations; (2) at the time the representations were made the debtor knew they were false; (3) the debtor made the representations with the intent to deceive the creditor; (4) the creditor relied upon such representations; and (5) the creditor sustained the alleged loss and damages as a proximate result of the false representation. *Id.* at 655. As an alternative to the *Houtman* test, another test has been applied in cases concerning credit purchases. This test was adopted by the court in *In re Lyon*, 8 B.R. 152 (Bankr. D. Me. 1981). Under the *Lyon* test, if at the time of the purchase, the debtor did not intend to pay for the credit purchase, or if the debtor was so hopelessly insolvent that he should have known he would be unable to pay for the purchase, then the requirements for false representation has been met. *Id.* at 155.

In the case at bar, the Debtor made false representations concerning his earning ca-

pacity as an employee of Overhead Door. Further, the Debtor made the statements with the knowledge that they were not true. Moreover, even though the Debtor testified at the hearing that he "felt" he could make payments on the ring, no payment was ever made. Similarly, the Debtor was aware that the creditor extended credit based on his representation as an employee of Overhead Door.

Thirdly, with respect to the reliance requirement, courts have traditionally found no reliance when three situations exist: (1) when the creditor knows the information listed is not accurate. *See, Swint v. Robins Federal Credit Union*, 415 F.2d 179, 184 (5th Cir.1969); *In re Houk*, 17 B.R. 192, 195–96 (Bankr. D. S.D.1982); (2) when the statement does not contain sufficient information to portray realistically the debtor's financial status, *see, In re Magnusson*, 14 B.R. 662, 668–69 (Bankr. N.D. N.Y.1981); and (3) when the creditor's investigation suggests that the statement is false or incomplete. *See, In re Smith*, 2 B.R. 276, 279 (Bankr. E.D. Va.1982).

Two alternative standards are frequently being used to determine the reasonableness of a creditor's reliance. Some courts have incorporated the duty of ordinary care into the concept of reasonable reliance under § 523(a)(2). *In re Breen*, 13 B.R. 965, 969 (Bankr. S.D.Ohio, W.D.1981) (creditor has a duty to make a reasonable check of other available sources and should not rely solely on the financial statement); *In re Shepherd*, 13 B.R. 367, 372 (Bankr. S.D.Ohio, W.D.1981) (creditor cannot conduct business without due care and then claim that as a result of a debtor's deception it extended credit). This Court does not impose such a duty of care. *See, In re Anderson*, 29 B.R. 184, 194, n. 8 (Bankr.N.D.Iowa 1983).

Other courts have determined reasonable reliance by comparing the creditor's normal business practices and the standards and customs of the industry, in light of the existing circumstances. *In re Patch*, 24 B.R. 563, 567 (Bankr.D.Md.1982); *In re Ardelean*, 28 B.R. 299, 301–02 (Bankr.N.D.

Ill.E.D.1983) (actually following normal business practice is reasonable); *In re Granovetter, supra* (creditor's deviation from normal business practice is not reasonable).

In the case at bar, the creditor followed its normal practice when it extended the Debtor credit for the rings. The creditor requested information which was intended to indicate if the Debtor could pay for the purchase. This request produced a figure of $1,700.00 as a monthly salary. This was adequate to meet monthly payments for the rings. The creditor then checked its own records to see if the Debtor's charge account was in good standing. After learning that the account's August billing had not been paid, the creditor suggested that it be paid. Payment brought the account in good standing. The creditor relied on the information and the payment in making its credit decision. Such reliance was a normal practice. Therefore, the creditor's reliance was reasonable.

The last element of the *Houtman* test, that the creditor suffered a loss and damages as a proximate result of the debtor's false representation, is proved by inference. The value of the rings when purchased was $1,095.92. The Debtor's possession of the rings without paying for them is a monetary loss to the creditor. Such loss is the proximate result of the Debtor's false representations, since the creditor would not have extended credit to acquire the rings but for the Debtor's false representations. The Court finds that the elements of the *Houtman* test have been proved. The Debtor did engage in false representation.

Alternatively, applying the *Lyon* test, the Court infers an intent by the Debtor not to pay for the rings. Contrary to that stated on the application form, the Debtor was not earning a salary of $1700 a month. The Debtor was financially unable to pay some of his other creditors when he ordered and later took possession of the rings. The Debtor never made a single payment on the rings. He filed for bankruptcy fifteen days after receiving the first

bill bearing the charges for the rings. Under the *Lyon* test, these facts constitute false representation. The Court finds the creditor has met its burden of proof. The Debtor incurred the consumer debt through the use of false representation.

In sum, the Court therefore finds that the Debtor incurred the debt by false representation within the meaning of 11 U.S.C. § 523(a)(2)(A).

## II. *Directed Verdict*

■ The Court directed a verdict for the wife because the creditor's evidence failed to prove her involvement with the incurrences of the debt. Now the Court must determine whether a directed verdict for the Debtor should be granted.

■ Directed verdicts are appropriate when, after viewing the evidence and reasonable inferences in the light most favorable to the non-movant without assessing credibility, reasonable minds would not differ as to the conclusions of facts to be drawn. *Banks v. Koehring Co.*, 538 F.2d 176, 178 (8th Cir. 1976); *Smith v. Hussman Refrigerator Co.*, 619 F.2d 1229, 1235 (8th Cir. 1980). Based on the conclusions reached in Division I, *supra*, the Court finds that the Motion for Directed Verdict for the Debtor should be denied.

## III. *Court Costs and Attorney's Fees*

The Debtor, relying on 11 U.S.C. § 523(d), requested costs and attorney's fees in his counterclaim. That section provides that if a creditor requests determination of dischargeability of a consumer debt and such debt is discharged, the Court shall grant costs and reasonable attorney's fees for the debtor, unless such granting would be inequitable. 11 U.S.C. § 523(c). Section 101(7) defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." *Id.* § 101(7). Because the consumer debt has been found to be nondischargeable, the Court finds this issue is moot.

The Court has, in accordance with the foregoing, entered its Orders consistent with this Memorandum.