**In re Gene HECKAMAN & Janet Heckaman, Debtors.**

**Leo SHEA & Atha Shea, Plaintiffs,**

**v.**

**Gene HECKAMAN & Janet Heckaman, Defendants.**

Bankruptcy No. B–85–3137–PHX–SSC.
Adv. No. 85–541.

United States Bankruptcy Court,
D. Arizona.

March 23, 1987.

J. Kent MacKinlay, MacKinlay & Bradshaw, Mesa, Ariz., for the Sheas.

David Wm. Engelman, Phoenix, Ariz., for debtors.

## DECISION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

On October 16, 1985, Gene and Janet Heckaman, referred to hereinafter as "Debtors," filed for bankruptcy relief under Title 11, United States Code, Chapter 7. The Debtors were the principals in a business operation known as Forest Homes Inc., hereinafter referred to as "Forest Homes." Forest Homes was in the business of selling modular homes for placement on the purchaser's real property. On or about June, 1985, Forest Homes entered into a purchase agreement with Leo and Atha Shea, hereinafter referred to as the "Sheas," for the sale of one Alpine Log Cabin Shell Kit for the sum of $27,507 cash. The Sheas paid for the Log Cabin Kit, and Forest Homes filed for bankruptcy. Shortly thereafter, the Debtors filed their own personal bankruptcy. The Sheas never received their Log Cabin Kit.

On December 9, 1985, the Sheas filed an adversary complaint, identified as adversary docket number 85–541–SSC, against the Debtors seeking to have their claim in the amount of $27,507 declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). The Sheas' claim against the Debtors arises from the execution of the purchase agreement between the Sheas and Forest Homes and certain oral representations made at the time of execution or shortly thereafter. The Debtors denied liability for the claim on the basis that they were insulated from corporate liabilities incurred by their prior corporate business known as Forest Homes.

After the completion of discovery, the parties filed a joint pretrial order. On October 16 and 20, 1986, the court convened an evidentiary hearing on the merits of the Sheas' complaint. Following the presentation of evidence, the court took the matter under advisement.

## LEGAL ISSUES PRESENTED

I. Whether the debt due and owing to the Sheas should be deemed nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

II. Whether the debt due and owing to the Sheas should be deemed nondischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

## DISCUSSION

The evidence adduced at the trial of this matter reflects that the Sheas had investigated the market for quite some time in an effort to purchase a quality, but prefabricated, log cabin to place on their lot in northern Arizona. In fact, on cross-examination, Mr. Shea admitted that he had first examined the Forest Homes cabins in 1984. He and his wife had continued to view log cabin homes as displayed at a number of sites by a number of different parties for the next one and one-half years. It was the intention of the Sheas to retire to the log cabin home. Therefore, the money to be utilized for the purchase of the cabin was to be drawn from the wife's profit-sharing plan, and both the husband and wife would no longer be employed full time.

On or about June 20, 1985, the Sheas made the decision to return to the model home/sales office of Forest Homes to purchase the prefabricated Log Cabin Kit of said entity. On June 20, the Sheas spoke with Kent Heckaman, the son of the Debtors, and later Gene Heckaman, one of the Debtors, concerning the purchase. The Sheas agreed to purchase the basic "shell kit" of Forest Homes, with the Sheas to undertake all foundation work and the completion of the interior of the log cabin. The Sheas were effectively acquiring a kit that required that Forest Homes order the logs and other necessary pieces for the log cabin, with only limited assembly to be done by Forest Homes. Gene Heckaman advised the Sheas that he would order the logs immediately for the log cabin. He stated that the logs would be delivered, and the Log Cabin Kit completed within three weeks. The Sheas agreed to purchase the Kit in cash, for which they were to receive a discount. The Sheas agreed to pay one-half of the purchase price; to wit, the sum

of $15,000, as a deposit. At the time, Gene Heckaman advised the Sheas that he had recently acquired the Forest Homes business.

It is undisputed that Gene Heckaman called the Sheas on June 25, 1985, to obtain the balance of the purchase price from the Sheas. Gene Heckaman stated that if the balance of the purchase price were delivered to him immediately in cash, the purchase price of the Log Cabin Kit would be reduced further by as much as $1,000 to $1,500. On June 25, the Sheas did tender in person to Gene Heckaman a second check in the amount of $12,507, the balance of the original purchase price for the Log Cabin Kit.[1] Gene Heckaman then advised the Sheas that he would see the Sheas again in three weeks, when the Kit had arrived.

The testimony of Mr. Shea that he believed he was contracting with Gene Heckaman in his individual capacity, and not as an officer of Forest Homes, was not credible. The purchase agreement was reduced to a writing, which clearly indicated that Forest Homes was the seller, and the two separate checks tendered by the Sheas to purchase the Kit were also made payable to Forest Homes. No evidence was introduced by the Sheas which would indicate that the checks were improperly negotiated by either of the Debtors or by their son.

When Mr. Shea returned to the Forest Homes site subsequently, he saw the bankruptcy notice in the Forest Homes window.[2] No money was returned to the Sheas, and the Sheas never received any logs or any part of the Kit.

On May 21, 1985, a corporate resolution of Forest Homes was executed by the Debtors authorizing the filing by the corporation of a petition under Chapter 11 of the Bankruptcy Code. No deadline or time frame was indicated as to the filing of the petition. On June 26, 1985, Forest Homes did file a Chapter 11 petition; and on October 16, 1985, the Debtors filed individual petitions under Chapter 7 of the Bankruptcy Code.

One document introduced into evidence and dated July 16, 1985, concerning the obtainment of post-petition financing by Forest Homes indicated that said corporation had eighteen contracts at the time of the commencement of the Chapter 11 proceedings that it was hoping to assign to a third party for completion. According to the document, the third party was to supply all necessary capital to complete the contracts. It was hoped that the third party would purchase the assets or stock of Forest Homes. The post-petition financing was never approved by the Bankruptcy Court, and the corporate proceedings were converted to proceedings under Chapter 7. The Trustee of Forest Homes, in the orderly administration of the case, subsequently sold all of the assets located on the premises of Forest Homes. It is uncontroverted at the time of the trial in this matter that the Sheas did not at any time attempt in the proceedings of Forest Homes to reclaim all or a part of their Kit.

The gravamen of the Sheas' case at trial was that there was a duty by Gene Heckaman or his son to disclose that Forest Homes was experiencing financial problems either on June 20 or June 25, 1985, when the checks were tendered by the Sheas.[3] The evidence does not afford any other theory of recovery. The oral representations made by Gene Heckaman and his son could only be described as statements that the business had recently been acquired by the Heckamans and that the

1. Since a discount had been promised to the Sheas, it was unclear from the testimony at the time of trial why the Sheas nevertheless tendered the full amount of the balance of the purchase price.

2. It is unclear from the testimony of Mr. Shea as to the form and substance of the bankruptcy notice that he viewed. However, inasmuch as Forest Homes did file a Chapter 11 proceeding, this court assumes that what he viewed in the window was notice of said filing by the corporation, and not notice of the filing of the bankruptcy petitions of the Debtors herein.

3. At the trial, counsel for the Sheas notified the court that the Sheas would no longer pursue the alter ego theory of recovery, which could potentially find the individual Debtors responsible for the actions of a corporation.

Log Cabin Kit would be delivered to the Forest Homes site within three weeks of June 25, 1985. These oral representations could arguably be construed as those made by *any* business on the eve of a Chapter 11 filing to ensure that the business operations remained as normal as possible. In addition, and unfortunately, the Sheas took no action to determine whether or not a Log Cabin Kit was subsequently delivered to the Forest Homes site. It is conceivable, and no evidence was introduced by the Sheas to controvert same, that the Kit was delivered to the Forest Homes site, and perhaps subsequently sold by the trustee of Forest Homes when the proceedings of the corporation were converted to those under Chapter 7.

In reviewing the law concerning a Section 523(a)(2)(A) claim, the Ninth Circuit has previously indicated that a five-part test is to be utilized in determining whether a debt is nondischargeable on the basis that money or property was obtained by false pretenses or false representations. *In re Houtman*, 568 F.2d 651, 655 (9th Circuit 1978); *In re Taylor*, 514 F.2d 1370, 1373 (9th Circuit 1975).[4]

The Sheas must prove by clear and convincing evidence[5] the following: 1) The Debtor made the representations; 2) That at the time the Debtor knew they were false; 3) That the Debtor made them with the intention and purpose of deceiving the creditor; 4) That the creditor relied on such representations; 5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Houtman, supra* at 655.

■ The *Houtman* case does not provide for any affirmative duty to disclose financial difficulty on the eve of a bankruptcy filing. In fact, when this court questioned counsel for the Sheas if there was any case

law to support such an affirmative duty to disclose, counsel replied in the negative. As to the *Houtman* test, this court finds as a matter of law that at the time the representations were made to the Sheas by Gene Heckaman or his son on behalf of Forest Homes, there was no intent to deceive, nor did the Heckamans have actual knowledge of the falsity of the statements, nor were the statments made with a reckless disregard as to the truth or falsity of the statements. This court further finds that there was absolutely no evidence introduced at the time of the trial which would indicate that Janet Heckaman, one of the Debtors herein, made any representations to the Sheas. This court further finds as a matter of law that at the time the statements were made by the Heckamans as to the completion of the Sheas Log Cabin Kit, there was the expectation by Gene Heckaman that the Kit would be delivered in a timely manner. Moreover, no evidence was introduced by the Sheas that, in fact, the monies were not utilized to purchase the logs and that the logs were not delivered to the Forest Homes site.

Moreover, inasmuch as this is a nondischargeability proceeding as to Gene and Janet Heckaman, the Sheas have introduced no evidence which would support a theory that the *individual* Debtors should be liable for representations made on behalf of a corporate entity.

Based upon the foregoing analysis, this court concludes that concerning the five-part test enunciated in *Houtman*, the Sheas simply had unreasonable expectations as to the services to be performed by Forest Homes and when those services would be performed, but the Sheas have failed to meet their burden of proof on each and every part of the five-part test.

---

**4.** The *Houtman* and *Taylor* cases were decided under Section 17(a)(2) of the Bankruptcy Act of 1898, as amended. However, at least as to the provisions concerning false pretenses and false representations, the provisions are sufficiently analogous under the Bankruptcy Act and the Bankruptcy Code that the *Houtman* and *Taylor* decisions should still be accorded *stare decisis* effect. *In re Singleton*, 37 B.R. 787 (Bankr.D.

Nevada 1984); *In re Vanderloos*, 64 B.R. 813 (Bankr.D.Montana 1986); *In re Burklow*, 60 B.R. 728 (Bankr.S.D.California 1986).

**5.** *In re Furimsky*, 40 B.R. 350 (Bankr.D.Arizona 1984); *In re DeRosa*, 20 B.R. 307 (Bankr.S.D.N.Y.1982).

Concerning the claim of the Sheas under Section 523(a)(6) of the Bankruptcy Code, the Sheas must prove by clear and convincing evidence[6] that the Sheas sustained damages as a result of the willful and malicious conduct of the Debtors. The Ninth Circuit has previously defined "willful and malicious" as an intentional act which causes injury. *In re Cecchini*, 772 F.2d 1493 (9th Cir.1985). Normally the claimant must prove a specific intent to injure under such a theory of recovery, unless the injury is the result of a wrongful act (such as conversion), in which case no specific intent need be proven. *Cecchini* also indicates that the requisite intent may be proven if a reckless disregard by the debtors has been shown. As to this theory of recovery, counsel for the Sheas have produced no authority which would indicate that the principals of a corporate entity, absent some type of legal theory which pierces the corporate veil, should be held responsible for the actions taken by a corporate entity. Although Gene Heckaman may have acted negligently in receiving the checks tendered by the Sheas on June 20 and June 25, 1985, and had unreasonable expectations about the future viability of Forest Homes, there was no evidence adduced at the time of trial that would indicate that Gene Heckaman, the Debtor herein, acted with reckless disregard, or acted with specific intent to injure the Sheas, or committed a wrongful act, such as conversion. As stated previously, no evidence was introduced at the time of the trial that would indicate that Janet Heckaman in any way interacted with the Sheas, so that the Sheas might have their debts deemed nondischargeable as to her. The Sheas, therefore, have failed to meet their burden of proof with respect to this claim. It is, therefore,

ORDERED that the debts of the Sheas be discharged and that a judgment be entered in this adversary proceeding in favor of the Debtors.

This Decision and Order shall constitute findings of fact and conclusions of law pursuant to *Fed.R.Civ.P.* 52, as made applicable in bankruptcy proceedings by Rule 7052 of the *Rules of Bankruptcy Procedure.*

---

6. In re *Furimsky,* 40 B.R. 350 (Bankr.D.Arizona 1984); *In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982).