**In re Claude K. FISACKERLY, Jr., Debtor.**

**ROSTER CORPORATION, Plaintiff,**

v.

**Claude K. FISACKERLY, Jr., a/k/a C.K. Fisackerly, Jr., Defendant.**

**Bankruptcy No. 88–20079–B. Adv. No. 89–0111.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Feb. 23, 1990.

Roger Stone, Memphis, Tenn., for Roster Corp.

C.K. Fisackerly, Jr., Memphis, Tenn., pro se.

Norman P. Hagemeyer, Memphis, Tenn., Chapter 7 Trustee.

Julia Chinn, Memphis, Tenn., Asst. U.S. Trustee.

## MEMORANDUM OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

WILLIAM H. BROWN, Bankruptcy Judge.

This adversary proceeding came before the Court upon the complaint filed by Roster Corporation (hereinafter "Roster") to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2) and (6) and was heard on December 12, 1989, with the defendant/debtor acting pro se. No answer to the adversary proceeding was filed; however, pretrial conferences had been conducted and a pretrial order had been entered allowing discovery through November 30, 1989, and setting the trial on its merits for December 12, 1989, said order being approved by Mr. Fisackerly, pro se.

The issues raised in this adversary proceeding are core pursuant to 28 U.S.C. § 157(b)(2)(I), and the following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### HISTORY OF CASE

This Chapter 7 case began as an involuntary petition against the debtor filed on January 5, 1988, to which involuntary petition the debtor answered and moved to dismiss. On June 13, 1988, Chief Judge David S. Kennedy entered an order for relief under Chapter 7 and, after delays in getting the schedules and statements filed, the § 341 meeting of creditors was conducted on January 18, 1989, with March 20, 1989, being set as the last date to file complaints objecting to discharge or to determine dischargeability of debt. Roster Corporation filed a motion to extend the time to file its complaint, and after notice and opportunity for hearing an order extending that time was entered, giving the creditor until June 12, 1989. This adversary proceeding was filed on June 6, 1989; therefore, the complaint is timely. The debtor has appeared in Court in reference this adversary proceeding, after service upon him, and the Court has both in per-

sonam and subject matter jurisdiction. *See*, 28 U.S.C. § 157.

## ISSUES PRESENTED

The complaint asserts that the debtor is obligated to Roster Corporation in the amount of $148,227.44 plus 12% interest from December 23, 1987, and all costs, which amounts should be excepted from discharge on the basis that the debtor had entered into an agreement with Roster Corporation obligating the debtor to a commitment fee of $120,000.00 plus liquidated damages in the event of breach of the contract. The plaintiff asserts that false financial information and/or misrepresentations were given by the debtor to Roster Corporation so as to induce Roster Corporation to arrange for the purchase of an aircraft and aircraft financing on behalf of the defendant, and the plaintiff contends that the exception from discharge should be granted in accordance with 11 U.S.C. § 523(a)(2) and (6). Pertinent portions of those Code sections provide as follows:

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

## FINDINGS OF FACT

1. Mr. Glen Johnson, President of Roster, testified that in 1987 the company was engaged in services including investment banking.

2. As a part of this banking service, Roster would seek to obtain loans for its clients, with the normal practice being that Roster would be paid a fee if it obtained a commitment for financing, which fee was then earned whether the financing was accepted by the borrower or not.

3. In April, 1987, the defendant submitted a loan application, with accompanying documents, including written financial statements dated March 1, 1987, June 1986, June 1985 and June 1984, to the plaintiff. The application sought a loan of 8.4 million dollars for the purposes of acquisition of machinery and equipment and restructuring existing debt. The application is in the name of C.K. Fisackerly, Jr. shown as a proprietorship in the business of "money managers," and the application reveals annual interest income of one-half million dollars and trading profits of five million dollars. The application was signed by Mr. Fisackerly on April 27, 1987, and its "schedule of real estate owned" refers to "See Statement." Apparently this reference was to the accompanying financial statements. The more recent financial statement dated March 1, 1987, was signed by Mr. Fisackerly showing total assets of almost fifty million dollars and total liabilities of less than fourteen million dollars. Real estate owned was shown at thirty and one-half million dollars with a real estate debt of 11.3 million dollars. A schedule was a part of the documents presented to the Court listing government securities, real estate and life insurance. The real estate listed included two parcels of property in Memphis with fifty percent ownership and zero debt and a total value of in excess of 14.7 million dollars. A parcel of real estate in California and another parcel in Florida were shown at one hundred percent ownership and with a value of 15.4 million dollars and a debt of 10.3 million dollars.

4. Mr. Johnson testified that his company looked primarily at the "debt free" real

property to support the loan request. (*See* Trial Ex. 1) He further testified that without the unencumbered real estate on the written financial statement, Roster would not have pursued its transaction on behalf of the debtor.

5. On April 29, 1987, Mr. Fisackerly transmitting a letter with a check payable to J. Mesinger Aircraft Sales, Inc. for $25,000.00 as a deposit on an airplane for the purpose of reserving the aircraft for ten days until he obtained financing in the amount of 6.4 million dollars. (*See* Trial Ex. 2) The letter instructed that the check was not to be deposited; however, it apparently was deposited and was returned for insufficient funds. Roster received a call (the date not being established in the record) from J. Mesinger Aircraft Sales that this check had not cleared.

6. Mr. Fisackerly had been referred to Roster by Mr. Baughman at J. Mesinger Aircraft Sales.

7. On April 30 (apparently 1987), the debtor entered into a purchase agreement with Staley Continental, Inc. for the purchase of a Falcon 200 aircraft in the amount of 6.4 million dollars. (*See* Trial Ex. 4)

8. On May 21, 1987, the debtor entered into a written contractual agreement with Roster Corporation. (*See* Trial Ex. 3) The agreement provided that Roster would attempt to obtain an aircraft and an operating lease proposal or commitment for 8.4 million dollars, repayable over a five year term at no more than 10.75% interest. In return for such a commitment, a fee of $120,000.00 would be payable to Roster. The agreement provided for partial payment in numerical paragraph 1: "Upon execution and delivery to CLIENT of a verifiable proposal or commitment AGREEMENT, that falls within the preceding parameters, CLIENT shall pay to Roster the sum of Sixty Thousand Dollars ($60,000.00)."

The agreement further provided in its numerical paragraph 8 as follows:

The parties acknowledge that Roster does not warrant or guarantee the issuance of the loan proposal or commitment which is to be applied for pursuant to this AGREEMENT. CLIENT acknowledges that CLIENT has been informed and understands that any resulting loan commitment may not be acceptable to CLIENT or meet CLIENT'S initial funding request. However, if CLIENT'S accept, Roster and its affiliates are due the fee. Herein, CLIENT further acknowledges that any commitment instrument delivered which meets or exceeds the criteria of the proposal or commitment request which CLIENT MAY CHOOSE TO DECLINE, shall still require full payment of Roster's fee as detailed. [sic]

9. Roster forwarded its financial package and request on behalf of the debtor to Westinghouse Credit Corporation, and on May 28, 1987, Westinghouse returned a letter "proposal to provide single investor lease financing for the acquisition of one (1) Falcon 200 and term loan financing to Mr. C.K. Fisackerly, Jr.," which was subject to certain terms and conditions. The letter noted that Westinghouse Credit Corporation's "commitment is subject to final approval of the transaction by its investment committee, the receipt of additional collateral, a satisfactory inspection and appraisal of the Aircraft, and the negotiation and execution of satisfactory documentation." (*See* Trial Ex. 5) This letter from Westinghouse Credit Corporation was directed to Roster Corporation and provided for the acceptance by Mr. Fisackerly. The copy introduced to the Court did not contain Mr. Fisackerly's signature.

10. Mr. Johnson testified that Roster received no funds for its part in this transaction and was forced out of the asset financing business as a result of its inability to follow through with Westinghouse Credit Corporation.

11. On May 12, 1987, a letter from a trustee of the Thomas Hoehn Trust was directed to Mr. Robert E. Cassa, Jr. of Roster Corporation advising that "Mr. Fisackerly is not free to draw on these assets at will, and further, the assets of the trust can not be encumbered or pledged in any

way." (Trial Ex. 6) The letter does not specify which assets are so restricted.

12. Mr. Cassa, on behalf of Roster, had dealt with this loan and had negotiated with Mr. Fisackerly. Mr. Johnson, by contrast, had never met Mr. Fisackerly in person and did not know everything which Mr. Cassa may have known.

13. At the request of Roster, and in preparation for this trial, Stewart Title Company of Memphis performed abstracts of property in Shelby County, Tennessee, which abstracts found no real property for the relevant period in Mr. Fisackerly's name. Stewart Title found that the real property in Shelby County which was listed in Mr. Fisackerly's financial statement had been in a trust ownership.

14. Mr. Fisackerly testified that he had accompanied the Roster agreement (Trial Ex. 3) with a telegram, and Mr. Fisackerly offered trial exhibit 10 as a handwritten copy of that telegram. This handwritten notation is signed only by Mr. Fisackerly, purportedly dated May 22, 1987, and its introduction would violate parol evidence. Therefore, the Court has not considered the contents of trial exhibit 10 on the merits of this complaint.

15. Mr. Fisackerly testified that the two pieces of real estate in Shelby County, shown on his financial statement with fifty percent ownership, were properties to which his wife had a marital interest. The debtor testified that he had no ability, nor did his wife, to pledge this land for any loan.

16. The plaintiff had sued in the Allen Superior Court, in Indiana, for damages on this transaction. (*See* Trial Ex. 11)

17. A judgment was obtained, which judgment was brought to the Circuit Court of Shelby County, Tennessee for registration and enforcement. Judgment was thereafter entered in the Shelby County Circuit Court in the amount of $148,227.44 plus interest at 12% per annum from December 23, 1987, said judgment being against Claude K. Fisackerly, Jr., a/k/a C.K. Fisackerly, Jr. (*See* Trial Ex. 12)

18. A response to the Indiana suit was offered by Mr. Fisackerly, purportedly dated December 10, 1987, and directed to Mr. Solomon L. Lowenstein, Jr., the attorney for Roster in the Indiana complaint. (*See* Trial Ex. 13) However, the Court notes that the purported letter to Mr. Lowenstein is on bond stationary and there is no evidence to support that it in fact is a copy or that the original was in fact mailed to Mr. Lowenstein.

19. A letter from Mr. Lowenstein to Mr. Fisackerly dated June 23, 1987 was introduced as Trial Exhibit 14.

20. The debtor's position on the letter from Westinghouse Credit Corporation was that it was a "proposal" not a "commitment" as he required.

21. The debtor testified that his understanding was that he would never have to pay any commitment fee until and unless the transaction actually closed.

22. Mr. Johnson, recalled on behalf of the plaintiff, testified that Westinghouse Credit Corporation's proposal was tantamount to a commitment, subject to certain "due diligence" work to be done. Mr. Johnson further testified that his company earned its fee by getting the Westinghouse proposal/commitment.

## CONCLUSIONS OF LAW APPLIED TO FINDINGS OF FACT

▬ The plaintiff's complaint pleads both § 523(a)(2) and § 523(a)(6), but the plaintiff's post-trial memorandum relies upon § 523(a)(2), and it is obvious that § 523(a)(2)(B) is the section relied upon, since the proof included a written financial statement. In order to satisfy § 523(a)(2)(B) as a basis for exception to discharge each of the elements must be established, with the burden of proof being on the plaintiff, by clear and convincing evidence. *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir. 1986).

The proof established that the debtor submitted to Roster a financial statement, in writing, and the financial statement was materially false. The debtor did not at-

tempt to rebut these elements of proof, and the overwhelming evidence supports a conclusion that the written financial statement for March 1, 1987, signed by the debtor, was materially false as to its listing of real property owned by Mr. Fisackerly. Given the fact that the schedule accompanying the loan application (Trial Ex. 1) shows only fifty percent ownership in the two Memphis parcels, nevertheless those parcels were shown as debt free, and the net equity could therefore be an inducement to a lender. However, Mr. Fisackerly had no onwership interest in the properties whatsoever and had no right to pledge those properties for any financial transaction.

The Court also concludes that the written financial statements contained information respecting the debtor's financial condition. 11 U.S.C. § 523(a)(2)(B)(ii).

 Further, the Court concludes that the debtor caused these financial statements, in particular the March 1, 1987 financial statement, to be issued with knowledge that they were false. 11 U.S.C. § 523(a)(2)(B)(iv). If the debtor had no active intent to deceive the plaintiff or other parties relying thereon, the debtor was obviously acting with gross recklessness and disregard for the truthfulness of the financial statements. Grossly reckless conduct may satisfy the element of intentional deception found in this statute. *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d at 492.

The only issue on which there can be any dispute is that involving the reliance by the creditor and whether the creditor reasonably relied. 11 U.S.C. § 523(a)(2)(B)(iii). The Court concludes that in fact Roster did rely upon the financial statement, and again there is no significant dispute on that fact. However, the debtor has put into issue whether the reliance was in fact reasonable. Reasonable reliance has been found by the Sixth Circuit to not be a "rigorous requirement." *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985). An evaluation of "all the facts and circumstances," in a case by case analysis, must be made. *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986).

In some situations, a lender may be required to independently investigate the truthfulness and accuracy of financial information in order to be said to reasonably rely. *See, e.g., In re Ward*, 857 F.2d 1082 (6th Cir.1988). In *Ward* a credit card lender was involved, with that lender seeking out the debtor. Here, the proof established that this debtor was searching for financing for acquisition of an aircraft, and Mr. Fisackerly was referred to Roster by J. Mesinger Aircraft Sales, at which point Mr. Fisackerly actively pursued a loan application with Roster. However, the role of Roster must be examined. Roster was not the ultimate lender; rather, Roster was in the business of finding the ultimate lender, for which Roster would earn a commitment fee. A review of the Westinghouse Credit letter reveals that Westinghouse, as an ultimate lender, would engage in further investigation and confirmation as well as collateralization of its loan, before the loan would be closed. The debtor should have anticipated that his written financial statements, looking attractive on paper, could induce an investment banker such as Roster into action. However, the question remains whether Roster's actions were reasonable. In that regard, these critical facts emerge:

1. On April 27, 1987, the debtor signed the application with Roster. (Trial Ex. 1)

2. On April 29, 1987, the debtor wrote a letter, accompanied by his $25,000.00 check, to Mr. Baughman at J. Mesinger Aircraft Sales. (Trial Ex. 2) The letter specifically stated that the check was not to be deposited until later instructions from the debtor. Nevertheless, the check was deposited.

3. No testimony concerning the events surrounding the depositing of that check was produced. The Court only knows that at some point in time the check was returned and this fact was communicated to Roster.

4. J. Mesinger Aircraft Sales was the entity that referred the debtor to Roster.

5. On May 12, 1987, a letter to Roster advised the plaintiff that Mr. Fisackerly

was not free to utilize certain unspecified trust funds.

6. The schedule of real estate accompanying the debtor's financial statement asserted that the debtor did not own 100% interest in the unencumbered real estate, upon which Roster said it relied in pursuing its course of action.

7. All of the above events (except for the uncertainty as to the dates surrounding the check's return and notification of that fact to Roster) occurred in time before the execution of the May 21, 1987, agreement between the debtor and Roster.

8. The May 28, 1987, letter from Westinghouse Credit is not a commitment binding upon Westinghouse or Mr. Fisackerly.[1]

From the above facts, the Court is left with doubt as to whether Roster reasonably relied upon the financial statement given by the debtor. It would appear that Roster had knowledge of facts which should have alerted Roster of a need to investigate Mr. Fisackerly's financial ability before engaging in extensive work. Mr. Robert Cassa, the Roster representative who worked with Mr. Fisackerly on this transaction, was not a witness at trial. Therefore, many questions remained unanswered.

While the Court does not wish to excuse Mr. Fisackerly's giving of such blatantly false financial information to any creditor, the Sixth Circuit has observed that each of the elements under § 523(a)(2) must be established by clear and convincing evidence. *In re Phillips*, 804 F.2d at 932. Doubts concerning a dischargeability determination must be construed in favor of the debtor. *See, e.g., In re Houtman*, 568 F.2d 651 (9th Cir.1978).

As to the § 523(a)(6) allegations, the proof also did not satisfy the statutory requirement of "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse." *Per-*

*kins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.1987). The injury to Roster would not have occurred if reasonable investigation of Mr. Fisackerly's financial status had been done. Further, the proof suggests some doubt about the effect of the Westinghouse Credit letter. The Court does not find a basis for an exception to discharge under § 523(a)(6).

## CONCLUSION

Based upon the proof and the entire record in this adversary proceeding, this Court concludes that all elements of § 523(a)(2)(B) [2] or § 523(a)(6) have not been established by sufficient evidence and that the plaintiff's relief should be denied. After an evaluation of all of the evidence in this case, this Court does not find clear and convincing evidence that the creditor reasonably relied upon the false financial statements.

IT IS THEREFORE ORDERED that the debt to Roster Corporation, in the amount determined by the state court, is not excepted from discharge under 11 U.S.C. § 523(a)(2) or § 523(a)(6).

SO ORDERED.

---

1. The Court understands that the Roster agreement (Trial Ex. 3) did not require Mr. Fisackerly's acceptance of any proposal/commitment produced by Roster. However, the nature of the conditional Westinghouse proposal is relevant to the issue of Roster's reasonable reliance.

2. § 523(a)(2)(A) is excluded from consideration because of the "statement respecting the debtor's financial condition."